(Decided 14th March, 1894.)

J. S. DITCH & BROS. *vs.* THE WESTERN NATIONAL BANK OF BALTIMORE.

*Banks and Banking—Check for Deposit—Insolvency of Bank—Evidence.*

Where a person deposited in a bank a check payable to his order, indorsed: For deposit to the credit of " the payee," and the same is credited to him as cash, and thereafter by like indorsement is transferred to another bank, which in good faith credits it as cash and pays the amount thereof to the former bank, which afterwards makes an assignment for the benefit of its creditors, the title to the check is vested in the bank which holds it and has paid for it.

The testimony of a depositor that " he regarded all the checks deposited by him as having been deposited for collection," is incompetent, where the endorsement was " for deposit." ·

NOTE.—A note on indorsement of check for deposit, is published with this case in 23 L. R. A., 164.

Ditch *vs.* Western National Bank.

APPEAL from the Circuit Court No. 2 of Baltimore City.

The appeal in this case was taken from a decree of the lower Court (WICKES, J.) determining that the property in the check in question passed from the depositors, Ditch & Bros., and vested in J. J. Nicholson & Sons, and that the latter conferred a perfect title upon the Western National Bank, their transferree. The opinion of this Court, together with the dissenting opinion, furnish a sufficient statement of the facts of the case.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS and McSHERRY, J., for the appellants. The Court declined to hear counsel for the appellee.

The Court of its own motion ordered a rehearing, and the cause was reargued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, BOYD and BRISCOE, J.

*Alfred D. Bernard,* and *Richard Bernard,* for the appellants.

Nicholson knew when he accepted the check in controversy that he was hopelessly insolvent, which fact was then unknown to the appellants. Therefore the acceptance of the check was a fraud upon them, and they are entitled to recover it unless the holder thereof shows itself to be a *bona fide* purchaser for value without notice of the rights of the appellants. *Boone on Banking, sec.* 297 ; *St. Louis & San Francisco Railway Co. vs. Johnston,* 133 *U. S.,* 566 ; *City of Somerville vs. Beal,* 49 *Fed. Rep.,* 790.

Apart from the question of the insolvency of Nicholson, the appellants are the owners of the check in question; Nicholson never being the owner thereof, but merely their agent to collect the same, the title thereto remaining in the appellants until collected. *Beal, Receiver vs. City of*

13                                     V. 79.

*Somerville,* 50 *Fed. Rep.,* 647; *Manufacturers Bank vs. Continental Bank,* 148 *Mass.,* 553; *St. Louis & San Francisco Railway Co. vs. Johnston,* 133 *U.S.,* 566,585; *Morse on Banking, secs.* 584, 586; *National Commercial Bank vs. Miller & Co.,* 77 *Ala.,* 173; *Balbach vs. Frelinghuysen,* 15 *Fed. Rep.,* 675; *Dan. Nego. Inst.* (*Ed.* 1891) *secs.* 340 *a,* 340 *b, and* 340 *c.*

If, upon the facts in the record, Nicholson was Ditch & Bros.' agent, it follows that the Western Bank was the agent of Nicholson, and the relation of the Western Bank to Ditch & Bros. was that of sub-agent, therefore Ditch & Bros. are as much entitled to recover the check from one as the other.

There is a plain duty imposed upon the two banks by the transaction, to collect the check if good, promptly to return it if not good. The character of the transaction is shown by both indorsements. *Miller et al. vs. Farmers and Mechanics' Bank of Carroll Co.,* 30 *Md.,* 400; *Wilson & Co. vs. Smith,* 3 *How.,* 763; *Freeman vs. Exchange Bank,* 87 *Ga.,* 45.

The restrictive indorsement " For deposit to the credit of J. S. Ditch & Bro." disclosed the conditions upon which they parted with the check in question, and therefore no one can be a *bona fide* holder thereof for value, without full notice of all the facts growing out of the relation arising from that indorsement. *Freeman vs. Exchange Bank,* 87 *Ga.,* 45; *Beal vs. City of Somerville,* 50 *Fed. Rep.,* 647; *White vs. National Bank,* 102 *U. S.,* 658; *Blaine vs. Bourne,* 11 *R. I.,* 119; *Lee & Co. vs. Chillicothe Branch Bank of Ohio,* 1 *Bond C. C.,* 387.

Any indorsement which shows that the holder of the check did not purchase and pay for it is restrictive. *White vs. National Bank,* 102 *U. S.,* 658; *Power vs. Finnie,* 4 *Call,* (*Va.*) 411; *Wilson vs. Holmes,* 5 *Mass.,* 543; *First Nat. Bank of Chicago vs. Reno County Bank,* 3 *Fed. Rep.,* 261; *Lee & Co. vs. Chillicothe Branch Bank*

*of Ohio,* 1 *Bond C. C.,* 387 ; *Beal vs. City of Somerville,* 50 *Fed. Rep.,* 647 ; *Freeman vs. Exchange Bank,* 87 *Ga.,* 45; *Lawrance vs. Fussell,* 77 *Pa.,* 460.

A non-restrictive indorsement gives the right to assume that the indorsee was a purchaser for value; " that on the face of the paper he is the owner thereof." *Tyson and Rawls vs. Western National Bank, supra* ; *Sweeny vs. Easter,* 1 *Wall.,* 166.

Apart from the fact that the plaintiff has not shown that Nicholson ever was the owner of the check in question, or that the plaintiff is now the *bona fide* holder thereof, all of which is incumbent upon it to prove under the pleadings, regardless of the status of accounts between Nicholson and the plaintiff; the account between Nicholson and the Western Bank showed, when the failure was announced, a balance in favor of Nicholson of $3,500.00. Down to that time the plaintiff believed Nicholson to be solvent, and would have paid and certified all it did pay and certify and $1,000.00 besides, if Nicholson had not made the last deposit. Therefore there was no special credit given or risk incurred by the plaintiff on the faith of the check in question; and there is no equity in the plaintiff's contention. *Miller et al vs. Farmers and Mechanics' Bank of Carroll Co.,* 30 *Md.,* 401.

No case has been found where it is *decided* that when a check is endorsed in blank and is deposited and credited as cash, thereby, as between the banker and the depositor, the title passes absolutely from the depositor to the banker. There are *dicta* to this effect in two New York cases, but no *decision* going that far. On the other hand we find the elaborate opinion in *Balbach vs. Frelinghuysen,* 15 *Fed. Rep.,* 675, 682, to the contrary; see also *Newark on Banks,* sec. 209, *and sections* 340*a,* 340*b, and* 340*c of Daniel on Negotiable Instruments* (*Ed.* 1891). Moreover, we find the Supreme Court of the United States in *St. Louis & San Francisco Railway Co. vs. Johnston,* 133 *U.S.,* 566,

approving *Scott vs. Ocean Bank*, 23 *N. Y.*, 289, holding that "the property in notes or bills transmitted to a banker by his customer to be credited to the latter, vest in the banker only when he has become absolutely responsible for the amount to the depositor, and that such an obligation, previous to the collection of the bill, *can only be established by a contract to be expressly proved or inferred from an unequivocal course of dealing.* If there be no bargain that the property shall be changed the relation resembles that of principal and agent." And similarly in a recent Massachusetts case, *Freeman's Nat. Bank vs. National Tube Works Co.*,151 *Mass.*, 413, the Court said of a sight draft which had been endorsed in blank and deposited as cash but not drawn against, "the endorsement, although in terms unrestricted, was without consideration, and merely for the purpose of collection. The bank became the agent of the defendant (depositor), and the defendant as owner of the draft can avail itself of all that its agent did for its protection."

When a check endorsed in blank is deposited with a solvent banker, the title thereto and to its proceeds does not pass to the banker until the proceeds are collected, no rights of third parties having intervened. So that if the check had been endorsed in blank, nevertheless as between Ditch and Nicholson, even if the latter had been solvent, the title would not have passed in the absence of special agreement that it should, and in the absence of Ditch having drawn against it.

But when the bank is insolvent, the matter is still clearer. It is then a fraud upon the depositor for the bank to receive a check, and if a check endorsed in blank be deposited by a customer ignorant of the bank's condition, and the bank immediately goes into the hands of a receiver, no title whatever passes from the depositor to the bank. *Horwitz vs. Ellinger*, 31 *Md.*, 492, 502, and in *Tyson & Rawls vs. Western National Bank, supra;* St. Louis, &c., Railway Co. vs. Johnston, 133 U. S., 566.

A check is not meant to circulate from hand to hand, or to be bought and sold by bankers and brokers and dealers, as is often done with notes and drafts. A check is designed for immediate payment and not for circulation. *Daniel Negotiable Instruments,sec.*1595. A check is not intended for discount, or to be used as collateral security, or any such purpose. Its sole purpose is to be immediately presented and paid. And the action of Ditch is an instance of this proper use of a check. As soon as they received it they endorsed it "for deposit" and deposited it—for what purpose? Not to be passed from hand to hand, or bought by third parties, or used by Nicholson in payment of his debts, but for one purpose only—to be paid, and to have the proceeds placed to his credit. And his endorsement was the proper one to carry out this sole purpose of a check. He endorsed it "for deposit," and thus gave notice on the check itself that the check was not to be bought and sold by third parties, but was to be presented for payment, and the proceeds placed to his account. Even Ditch himself could not use the check, after this endorsement, for any other purpose. Without erasing the words "for deposit," he could not sell the check or pay a debt with it, or make any other use of it. The negotiability of the instrument was absolutely destroyed, and it was rendered useless except for the one purpose of deposit.

The plain meaning of the endorsement was to prevent its being used for any other purpose than the purpose of deposit, and thus give notice to any one who might be offered the check that Ditch had deposited it with Nicholson as his banker. It gave notice in unmistakable terms that Nicholson had not bought the check, and was not authorized to use it as an owner. It shows that Ditch had placed it with Nicholson as his banker, and that Nicholson received it as such. The Western Bank, therefore, had notice from this endorsement that Nicholson had not

bought it, but had received it as a banker, subject to whatever rights the depositor might have. If Nicholson had a perfect title as owner of the check, the Western Bank also would acquire a perfect title. If Nicholson had no beneficial ownership in it, the Western Bank could acquire none. The bank took the risk of this inquiry, believing Nicholson to be perfectly solvent. It received the check with notice of the character of Nicholson's title stamped upon it. That title was fraudulent and utterly void.

It has been held that a banker receiving a check endorsed in this way receives it as agent only, and that the title does not pass to the banker. From this it follows that as the endorsement gives notice of the true ownership of the check, the depositor may recover its proceeds from any person who collects them. *Beal vs. City of Somerville,* 50 *Fed. Rep.,* 647, decided in 1892 by the Circuit Court of Appeals sitting in Massachusetts; *Freeman vs. Exchange Bank,* 87 *Ga.,* 45 (1891).

The endorsement "For deposit" disclosed to any one into whose hands it came that the check was placed with Nicholson by a depositor, and, therefore, that there was no consideration moving from Nicholson to Ditch. This point was expressly determined in *Freeman's Bank vs. National Tube Works Co.,* 151 *Mass.,* 413. When the Western Bank, knowing the check was endorsed by a depositor without consideration, accepted the check from Nicholson, it accepted it *with notice* that there was no consideration, and, therefore, under the well established rule, it cannot recover. *Cecil Bank vs. Farmers' Bank of Maryland,* 22 *Md.,* 156 ; *Miller et al. vs. Farmers and Mechanics' Bank of Carroll Co.,* 30 *Md.,* 397, 8.

*Samuel D. Schmucker* (with whom was *George Whitelock,* on the brief,) for the appellee.

The endorsement, "for deposit," upon the back of the check in controversy, means what it says, *i. e.,* that the

check is to be deposited with a bank or banker. This endorsement may be regarded as a special or qualified one, but the nature and extent of the qualification are simply that the check is to be deposited to the credit of Ditch & Bro., and that the title to it is not to pass to third persons except through and by means of the deposit.

The plain purpose of this form of endorsement, which is a customary one and well understood in banking circles, is to protect the endorser against any attempts of other persons to deal improperly with the check before it reaches the hands of the bank in which it is to be deposited. When it has once been deposited, and credited to the depositor, then the restrictive function of the endorsement has been accomplished, and the title to the check is in the banker with whom the deposit has been made.

This form of endorsement in effect declares that the check, when deposited, is to be subject to the ordinary legal relation existing between a depositor and a banker, in reference to deposits made by the former with the latter. That relation has been decided beyond controversy to be simply the relation of debtor and creditor; the bank becoming the owner of the deposit, and assuming in consideration thereof the relation of debtor to the depositor to an amount equal to the deposit. *Horwitz vs. Ellinger*, 31 *Md.*, 503; *Hardy & Bros. vs. Chesapeake Bank,* 51 *Md.*, 585.

When a deposit is general and no special agreement proved, the title to the money deposited, whatever it may be, passes to the bank. *Chesapeake Bank vs. Swain and Abell*, 29 *Md.*, 498.

A deposit is to be regarded as general, unless expressly made special. *Morse on Banking, sec.* 186.

Checks and drafts also, when deposited in the ordinary course of business and credited to the depositor as cash, become the property of the bank. *Morse on Banking, secs.* 573, 574, 577 ; *Bolles on Banks and Depositors,*

sec. 20 ; *Metropolitan National Bank vs. Loyd*, 90 *N. Y.*, 534-5 ; *Tyson & Rawls vs. Western National Bank,* 77 *Md.*, 412.

After Ditch & Bros. had deposited the check with Nicholson, and been credited with it as cash, they could not have recalled it without first producing their deposit book, and submitting to a cancellation of the credit, or in some manner compensating the banker therefor.

The appellants having endorsed the check in controversy for deposit, contended in their answer, and John S. Ditch, one of that firm, undertook to testify that it was not in fact deposited by them with Nicholson & Sons, but was simply left there for collection, and that it had been so endorsed for that purpose. This evidence has been excepted to, and is plainly inadmissible. Parties to a written instrument cannot in controversies with strangers be heard to vary the terms of the instrument by parol evidence. *Henderson vs. Mayhew*, 2 *Gill*, 409 ; *Anderson vs. Tydings*, 8 *Md.*, 442.

Even if Ditch & Bros. could be permitted to show that the check in controversy had not been deposited by them, but merely left with Nicholson for collection, they have signally failed to do so.

The Western Bank became the holder of the check in the ordinary course of business, for value, and without notice of any infirmity in Nicholson's title. At the time the deposit of $2500, which included the check in question, was made by Nicholson in the Western National Bank, he drew from the Bank $3000 in cash, which was, of course, paid as much upon the faith of this deposit as of the credit which he had theretofore fraudulently obtained at the bank by the deposit of a worthless check. In point of fact, his account was then overdrawn, and he was entitled to no credit whatever at that bank, except such as the $2500 deposit produced, so that the bank paid a present money consideration for the check in ques-

tion which exceeded in amount the face of the check. Apart, however, from honoring this check for $3000, it is shown that the bank subsequently paid Nicholson's additional check drawn on it for $1800. The bank was also at that time his creditor to a large amount for loans, etc., for which it was entitled to retain his deposits by virtue of its banker's lien. *Union Bank of Maryland vs. Cochran, 7 Gill & J.,* 142 ; *Farmers and Merchants' Bank vs. Franklin Bank, 31 Md.,* 412.

The bank was entitled to assert this lien upon the checks deposited with it by Nicholson, without reference to the true ownership of such checks, if the bank was without knowledge on the subject. *Maitland vs. Citizens' Nat'l Bank of Baltimore, 40 Md.,* 566 ; *Morse on Banking, sec.* 324.

Even if Ditch & Bros. had proven, which they did not do, a course of dealing between them and Nicholson, that as between them might vary the effect of the indorsement for deposit, and make Nicholson's title different from the ordinary title of a banker to a deposit made with him, the Western National Bank could not be affected by that custom, unless it was shown that it took the check with knowledge of the custom, which is admitted not to be a fact in the case.

BRYAN, J., delivered the opinion of the Court.

This case involves a question of considerable importance. Thomas J. Shryock & Co. drew their check for a hundred and eighty-seven dollars and fifty-five cents on the Third National Bank of Baltimore, payable to the order of John E. Reese. Reese endorsed it in these words: "Pay to the order of J. S. Ditch & Brother." The next endorsement was in these words: "For deposit to the credit of J. S. Ditch & Brother." Signed per T. F. Cassidy. It was admitted that Cassidy had due authority from Ditch & Brother to make and sign this endorsement.

Luther B. Ditch, a member of the firm of Ditch & Brothers, in person deposited this check, together with others in the bank of J. J. Nicholson & Sons, and they at the same time entered a credit of cash to the amount of all of these checks in the deposit book of Ditch & Brothers, and also in their own books. Ditch's testimony on this point is as follows: " That he handed his deposit to Johns R. Nicholson in person; that his firm kept another pass-book with Nicholson & Sons, in which accounts were left for collection, on which promissory notes only were entered; that when these promissory notes were paid credit was entered on the regular deposit book. All checks whether out-of-town or city checks, were entered on the regular deposit book as cash; on a few occasions checks dated ahead were entered as cash. If necessary, or if they were short of funds, they checked immediately after the deposit was made. They made no special arrangement about checking on deposit. * * * * That the paper left for collection, consisting of promissory notes, was not carried to the deposit books until the collection had been made, but all checks were entered in the deposit book when deposited as cash, as if they were so much currency, and they were at liberty to check against such deposits as soon as made, if they desired." Matthew Aiken, general book-keeper of Nicholson & Sons, testified: " That he knew J. S. Ditch & Bros.; that they had two accounts with his bank and a separate pass-book for each account,—one a deposit account, and the other an account for collection. The collections went to their credit when collected, and were then marked off their collection book and credited on the deposit book. The deposits made by Ditch & Bros. went to their credit on the books of Nicholson & Sons on the same day the deposit was made, and they were credited on the deposit book of Ditch & Bros. at the time the deposit was made "; and also " that the check in question forms a part of a credit of cash, $929.75, to Ditch & Bros. in their deposit book with Nicholson & Sons, on January 14th, 1892; and

that the amount of the credit was so entered on the deposit book at the time the deposit was made, and was carried to their credit on the books of Nicholson & Sons "; and also, " that all checks deposited by Ditch & Bros. were entered on their deposit book as cash and subject to immediate withdrawal in currency or anything else." When Ditch deposited this check, it is evident that he did not wish to have the money for it paid into his hand; because if he had wished the money it would have been as easy to obtain it from the Third National Bank as to deposit the check; and, secondly, because according to his own testimony and Aiken's, he could have drawn the money immediately if he had chosen to do so. Instead of the money he preferred a credit with Nicholson & Sons subject to his check; this was in all respects more convenient to him than the possession in hand of currency or coin. And this is what the endorsement plainly meant; the check was to be deposited and the amount of it was to be placed to the credit of Ditch & Brothers. The endorsement was in blank so far as the name of the endorsee is concerned; but when Ditch handed the check to Nicholson & Sons with the book in which his deposits were entered as cash, he evidently intended that the deposit should be entered in that book, and that he should receive credit for the amount of the check as cash, and that Nicholson & Sons should be the holders of the check as endorsees in blank. No form of words could have made his meaning plainer. And this meaning is in exact accordance with the endorsement. The endorsement showed that it was to be deposited in a banking house and that Ditch & Brothers were to receive credit for it; but the name of the banking house was not mentioned; it was left blank. By delivery Ditch designated the bankers with whom it was to be deposited, and who were to give the credit. If Nicholson & Sons had paid to Ditch & Brothers the full amount of the check in coin or currency when it was delivered to them, it is supposed that there would have been no question about

the nature and effect of the transaction. But they gave Ditch & Brothers what was preferred to the coin or currency; they gave them the unconditional right to get the coin or currency at any time they might see fit to call for it; thus relieving them from the trouble and risk attending the care and custody of it. Now, it is extremely difficult to see on what principle or by what process Ditch & Brothers could retain any interest in this check after they had delivered it to a blank endorsee and had received full and valuable consideration for it. It will not be alleged by any one that the banker did not give a consideration, valuable in the eye of the law, and sufficient to maintain the transfer of the check, when he made an absolute and unconditional contract with the depositor to pay his checks to the amount of the deposit. This point was decided in *Tyson and Rawls vs. Western National Bank,* 77 *Md.,* 412. It has been asked what would be the condition of the bank in case this check should be dishonored when presented for payment. The answer is not difficult. In *Tyson and Rawls vs. Western National Bank, supra,* the Court thought that the bank would have against the depositor the ordinary remedies which belong to the endorsee of dishonored instruments of this character. It could certainly recover from him the amount of the check. And here we may notice a portion of the testimony which has been made the subject of a good deal of comment. Aiken testified as follows: "It was not the custom of Nicholson & Sons to, charge back to the depositors the checks which had been deposited with them and were dishonored. The custom was to have returned the checks to the party and to get the money refunded." John Ditch testified: "should any check be returned they (Ditch & Brother) had always to make them good. That the Nicholsons never bothered themselves about the unpaid checks." This testimony merely shows that the bank was aware of its legal rights and that depositors paid voluntarily what they could have been compelled to pay by suit at

law.  Persons engaged in mercantile pursuits would lose all commercial credit and standing if they did not promptly perform their plain and well understood obligations.

In *Tyson and Rawls vs. Western National Bank,* the draft deposited was endorsed in these words: "For collection for account of Tyson and Rawls, Greenville, N. C." This Court held that this endorsement was not adequate to pass to the holders, the title to the draft, and that the evidence in the case did not show any other way by which it could have been passed.  The Court also held that it was the clear understanding between the parties that Tyson and Rawls (the depositors) should not obtain an absolute and unconditional credit in consequence of the deposit.  It being our opinion that Nicholson & Sons acquired title to this check, we must declare our carefully considered judgment.  If other tribunals for whose learning and ability we entertain the greatest respect, have arrived at conclusions different from our own we do not feel called upon to abandon the deliberate convictions which we entertain.  But we do not assume that there is a great contrariety in the opinions of the Courts on this question.  A great many cases have been brought to judgment; but their facts have been diversified in great variety. It has always been held that the bank and the depositor could make their own contracts.  Sometimes they have been made in express terms; and sometimes they have been inferred from the acts and conduct of the parties, and the regular and established course of dealing between them.  It can readily be seen how broad a field of inquiry has been spread out before the Courts, and what diversities of facts and combinations of facts would probably be presented for their consideration.  Among the great number of cases which have been earnestly pressed upon us, we will cite three in which the effect of an endorsement *"for deposit"* was considered.  The first is *National Commercial Bank vs. Miller & Co.,* 77 *Alabama,* 168.  In this case the bank brought an action against Proskauer, and sued

out a garnishment which was served on Miller & Co., private bankers, who were alleged to be debtors of Proskauer. We will state the Court's opinion in its own words: "The defendant, in the name of 'A. Proskauer & Co., agents,' opened in January 1883, a deposit account with the garnishees, who were bankers. On this account the defendant deposited checks payable to 'A. Proskauer & Co., agents,' which were entered in the pass-book, and drew checks, in the same name, 'on funds so deposited.' The check in question was indorsed 'For deposit, A. Proskauer & Co., agents.' The import and effect of such indorsement must be considered in the light of the attendant circumstances, and of the previous dealings between the parties. Where a depositor has for some time previously kept a deposit account with a banker, on which he was accustomed to deposit checks payable to him, entries of which were made in his pass-book, and to draw against such deposits, such an indorsement, in the absence of a different understanding, is presumptive of more than a mere agency or authority to collect. The special purposes for which an indorsement for deposit is made, under such circumstances may be readily inferred. It was a request and direction to the garnishees to deposit the sum to the credit of the defendant, and conferred on them, not only authority to collect, but also authority to put the check in such form, and use it in such manner, as in their judgment and discretion, having reference to the condition and necessities of their business, would make it most available to their protection. The effect of the indorsement, for the consummation of this purpose, is to vest the garnishees with the title to, and control of the check. If, in such case, the check is not paid, the banker depends for safety and indemnity on the liability of the drawer, and the security of the indorsement." It appeared that Miller & Co., the garnishees, had presented the check for certification to the bank on which it was drawn, and that it

was certified by that bank in these words: "*Good for eight thousand dollars.*" The Court say that the certification made a new and distinct contract between the holder and the certifying bank, which thereby became the debtor of the holder; and that the drawer and endorser of the check were released from all liability on it, and that as to them it was paid. The significance of the certification was a question in the case; because after it had been made, and after service of the garnishment, the defendant gave notice to Miller & Co., the garnishees, that he revoked their authority to collect it and that they were forbidden to present it for payment. But as it was already paid in legal effect to Miller & Co., they were the debtors of the defendant, and the notice was not efficacious to change the rights of the attaching creditor, or to displace the lien on the debt which he had acquired by service of the garnishment. We have mentioned the certification of the check and its consequences, because these matters were zealously urged in the discussion of this case. But we do not see how they bear any analogy to the facts on which the rights of the parties in the present case depend. The other two cases were thought to be still more decisive. In one of them, *Freeman vs. Exchange Bank,* 87 *Georgia,* 45, the Court used this language: "There being in evidence no facts extrinsic to the bill itself and its indorsements to throw light upon the question of title, we are not to be understood as holding that such facts might not exert a controlling influence on the question. Indeed, there is authority for giving them such effect when duly proved. A deposit of paper in bank by a customer, he indorsing it "for deposit," may operate to clothe the bank with title under certain circumstances. *National Commercial Bank vs. Miller & Co.,* 77 *Ala.,* 168." The other case is *Beal vs. City of Somerville,* 50 *Federal Reporter,* 647. Checks were deposited in the Maverick National Bank by the treasurer of the city of Somerville; each

of them was endorsed "*for deposit.*" The deposit was made about fifteen minutes before three *o'clock* in the afternoon; at three o'clock of the same day the bank closed its doors and never opened them again for business. At the time of the deposit it was irretrievably insolvent. Beal was appointed its receiver, and a bill in equity was filed against him by the city of Somerville. In the bill the facts just mentioned were alleged, and also the following: "The treasurer had for several years made deposits with the bank without any special agreement in regard thereto. There was no agreement that checks deposited should be considered as cash, or that the treasurer could draw against them before collection. The treasurer never drew a check for which his deposit was not sufficient without counting the proceeds of uncollected checks, except in a few instances, on a few occasions, by special arrangement with the bank. There was no express understanding that the checks should be credited to the city immediately on deposit, but they were always so credited on the pass-book at the time of the deposit." * * * * "It was the practice of the Maverick and the other banks in Boston, in some cases, to allow depositors to draw against checks deposited before such checks were collected, and in some cases not depending upon the bank's opinion of the reliability of the depositor and the makers of the checks." A demurrer was filed, admitting, of course, the facts stated. The Court in its opinion said among other things, Beal "fails to show that the city had an absolute right to check against the deposit as soon as made, irrevocable by notice from the bank; and that such right did not exist must be received by this Court as a matter of judicial knowledge." The decree determined that the checks were the property of the city. We have not made these long citations for the purpose of criticising these decisions, nor for the purpose of inquiring whether they sustain or oppose the judgment which we

have formed in the case before us. Our object has been to show the great variety in the facts and details of cases which have been adjudged, and to illustrate a sound juridical principle, that differing facts may justly lead to differing conclusions of law.

John Ditch testified that " he regarded all the checks deposited by him as having been deposited for collection; otherwise why should they have to make good those which might be returned?" The legal character and attributes of the deposit depend upon the endorsement and upon what was said and done at the time the deposit was made, and upon the regular and uniform course of dealing between the parties. The testimony of the witness was his opinion on a question of law. An exception was filed to it, and it was undoubtedly incompetent. The check on the day it was received by Nicholson & Sons was endorsed by them *"for deposit"* and deposited in the Western Bank, where they kept an account. It was passed to their credit, subject to their check, and on the same day they largely overdrew their account. Later in the day they made an assignment for the benefit of their creditors, and it became known that they were totally insolvent. Although Nicholson & Sons acquired title to the check in the manner which we have stated, it is quite true that in a controversy with their trustee, Ditch & Brothers might successfully impeach the transfer for fraud and set it aside. But the question with the Western Bank stands on different grounds. It is a *bona fide* holder of a negotiable instrument for value, without notice of any facts which would invalidate the title of the endorsers from whom they obtained it. All commercial principle and usage require that such a title should be protected.

At the request of Ditch & Brothers the payment of this check was stopped by the order of Shryock & Company, the drawers. Shryock & Co. filed a bill of interpleader in Circuit Court No. 2 of the city of Baltimore, and the Court

14                    v. 79.

required the Western Bank and Ditch & Brothers to litigate between them their respective claims to the ownership of the check. The decree established the title of the Western Bank, and we affirm it.

*Decree affirmed, with costs.*

(Decided 15th March, 1894.)

I sat in the former argument of this case, and I have examined the briefs of counsel filed, and I wish to state that I concur in the opinion of the majority.

HENRY PAGE.

FOWLER, J., delivered the following dissenting opinion, in which ROBINSON, C. J., and ROBERTS, J., concurred :

While the amount involved in this appeal is not large, yet the questions presented are important. The controversy here, as in the case of *Tyson & Rawls vs. Western National Bank,*77 *Md.,*412, recently decided by this Court, grows out of the conflicting claims of the Western National Bank of Baltimore, and one of the depositors of Nicholson & Sons, bankers in that city, who failed several years ago.

The check which is the subject of this litigation was dated January 13th, 1892, and was drawn by Thomas J. Shryock & Co. on the Third National Bank of Baltimore to the order of John E. Reese, who, on the day of its date, endorsed it to J. S. Ditch & Bro., who on the following day endorsed it as follows: " For deposit to the credit of J. S. Ditch & Bro., per Cassidy." Cassidy is a clerk of Ditch & Bro., and there is no question as to his authority to endorse. So endorsed, this check, with several others, amounting in the aggregate to $929.75, was deposited by one of the firm of Ditch & Bro. in the bank of Nicholson & Sons a short time before noon on the 14th January, 1892. The deposit was at once credited by the Nichol-

sons in the pass-book of Ditch & Bro., and a similar credit was made upon the books of the former, who at once endorsed the check in question thus, "For deposit, J. J. Nicholson & Sons," and deposited it in the Western Bank, receiving credit for the amount of the deposit as cash, both on their pass-book and also on the books of the Western Bank. It is conceded, of course, that Ditch & Bro. believed the Nicholsons to be solvent when the deposit was made in the latter's bank, but it would seem that the Nicholsons themselves must have been aware that they were not in the solvent condition the appellants believed them to be, for within an hour, or perhaps two, after these deposits were made they had placed on record a deed of trust for the benefit of their creditors, and had closed the doors of their bank. On the day of the failure of the Nicholsons, Ditch & Bro. heard of it, and immediately requested Shryock & Co., the makers of the check, to stop payment. This request was complied with, and the check having been duly protested, the Western Bank sued the makers. Whereupon a bill of interpleader, setting forth the respective claims of the Western Bank and Ditch & Bro. was filed by Shryock & Co., and a decree was passed by the Circuit Court No. 2 of Baltimore City requiring the Western Bank and Ditch & Bro. to interplead, the former as plaintiff and the latter as defendants. In accordance with this decree the Western Bank filed its bill, and Ditch & Bro. answered it. The bank alleged substantially that Ditch & Bro. endorsed the check in question to the Nicholsons, and deposited it with them as cash, and received credit therefor in their account with the Nicholsons, and that the Nicholsons thereby became the owners of the check, and having endorsed it to the Western Bank "for deposit," and having deposited it with and received credit for it as cash by said bank, it became and is the *bona fide* holder of said check by reason of the facts above mentioned, and because the Nicholsons were permitted to draw from the Western Bank the

funds represented by said check. The defense which Ditch & Bro. set up in their answer is that they endorsed the check "For deposit to the credit of J. S. Ditch & Bro." to enable the Nicholsons to collect the same in the usual course of business, and received that character of credit usual to receive when checks are deposited by a customer with a bank for collection. They deny, however, that by such deposit for collection the Nicholsons thereby became the owners of said check, or that they had a right to endorse the same to the Western Bank or to any one.

Upon the bill, answer and testimony, the Court below decreed that the property in the check in question passed from Ditch & Bro. and vested in the Nicholsons, and that the latter conferred a perfect title upon the Western Bank. From this decree Ditch & Bro. have appealed, and the question is whether the Western Bank has a valid legal title.

The general question of the relations between depositors and banks as regards their respective rights in and title to negotiable paper deposited by the former with the latter, is much embarrassed by a conflict of authority. But after all, as we said in *Tyson & Rawls, supra,* the conflict is more apparent than real. It will be found that the views expressed by the highest tribunals in this country and England, when carefully examined, differ not so much in the principles announced as in the facts to which these general principles have been from time to time applied. In most of the cases in which it has been held that the title to negotiable paper passed to the bank from a depositor, such paper was endorsed in blank or made payable to the bank. After stating the general rule that when a customer deposits *money* to the credit of his account, the bank becomes debtor and he is creditor, we said in the case just cited: "The consideration which a depositor receives for his money is the absolute and unconditional contract of the bank to pay his checks to the ex-

tent of his deposit. And the same rule obtains in the case of checks, * * * * wherever, under the circumstances of the case, it is applicable; that is to say, wherever the bank becomes the owner of the commercial paper, and the customer acquires the *unconditional right to draw for the proceeds.* When a check * * * * is endorsed *in blank or to the order of the bank,* and the proceeds credited to the depositor as cash, the bank becomes the owner of the paper by virtue of the endorsement." These quotations from such a recent case are sufficient to indicate our views in regard to the character of paper and the forms of endorsement there considered. But the endorsement in this case is neither an endorsement in blank nor to the bank. It is of a very different character from either, both in form and effect. Its terms are " For deposit to the credit of J. S. Ditch & Bro." It was contended by Ditch & Bro. that this is a restrictive endorsement, and by the Western Bank that it is partly restrictive and partly absolute—restrictive as to all the world except the Nicholsons, and as to them absolute as soon as it reached their hands.

If such an endorsement as this can be held to pass title to commercial paper, it must be so either because such is the clear meaning of the words used or because of some artificial or technical, but well known and settled, meaning given to the language of the endorsement by the custom and usage of banks and their customers, which indicates a transfer of title was intended, though not expressed. Of course, it is not, and could not be contended in this case that there is any such custom, for there is no evidence to sustain any such contention. What, then, is the fair and legal construction of this endorsement? In the first place, we start with the presumption that the depositor does not intend to part with title to his paper, subject to be rebutted only by evidence of an express contract to the contrary, or of facts from which such contract must be in-

ferred. 1 *Daniel Negotiable Instruments, sec.* 340c. We shall presently consider the effect of the credit given to Ditch & Bro. in anticipation of the collection of the proceeds of the check by the Nicholsons, but before doing so we wish to ascertain the import of the language of the endorsement itself. It is apparent no words are used to indicate a transfer of title. On the contrary, it is conceded the endorsement here used is for the purpose of destroying negotiability in case of loss or miscarriage of the check. If that be its object it is difficult to understand how such an endorsement, without something added thereto by special agreement, can be relied upon to establish title either in the Nicholsons or the Western Bank. The plain import of the endorsement would seem to be that the check was deposited for collection. What else could have been the object of the deposit? Certainly not for the purpose of getting an immediate credit, for it is in evidence that Ditch & Bro. not only had no agreement allowing them to draw on uncollected checks, but that in point of fact their deposited checks were always collected before they were actually drawn on, and were not considered cash until collected by the Nicholsons. In the case of *Beal vs. City of Somerville,* 50 *Federal Reporter*, 647, decided on the 5th May, 1892, by the U. S. Circuit Court of Appeals of the First Circuit, a case strikingly like the one at bar, and in which the endorsement was "For deposit. John F. Cole, Treasurer," the following facts appeared: Cole, the treasurer of the city of Somerville, endorsed the checks as above and handed them to the receiving teller of the Maverick National Bank with a deposit ticket and also his pass-book, and the teller at once credited therein and on the books of the bank the total amount of the checks. When the checks were received by the bank it was irretrievably insolvent, and closed its doors the same day of the deposit at three o'clock. There was no agreement to allow the customer

to draw at once on the proceeds of deposited checks. It was held, irrespective of the question of insolvency, that title to the checks so endorsed did not pass. "The transaction," say the Court, PUTNAM, J., delivering the opinion, "was primarily a deposit of checks with, secondarily a duty to be performed concerning them by the Maverick Bank." After stating the general principle that a deposit of *money* creates the relation of debtor and creditor between the depositor and the bank, the opinion of the Court continues: "But with reference to the checks claimed by the city of Somerville, the word by which the transaction is ordinarily described may conveniently have, and therefore should have, its full natural force and meaning. A mere deposit would only require a bank to keep; but a usage requiring the Maverick Bank to do in this case something more has continued so long, and is so notorious and universal that the law can take judicial notice of it, and it happens that its terms and limitations cannot be mistaken. The bank must use due diligence to collect, and, as collections are completed, the bank no longer holds the avails as bailee, but is authorized to mingle them with its other funds, and *thus* constitute itself a debtor." And again: "Aside from the right of the bank to constitute itself a debtor from the time the checks are converted into cash or its equivalent, instead of a mere trustee or agent, no qualification of the strict legal relations created by a bailment is deducible from the general nature of the transaction, the terms in which it is expressed or the settled custom, or is shown by" the bank. The case just cited is one of much interest and importance, and the opinion of the Court bears the impress of the most careful consideration and research.

In *Freeman vs. Exchange Bank,* 87 *Ga.*, 45, an endorsement precisely like the one we are considering was held to be restrictive. The endorsement was "For deposit to the credit of S. A. Brown & Co." The endorsers deposited

the draft so endorsed in the National Bank of Kansas City, which bank, by its cashier, endorsed the draft " Pay Exchange Bank or order for collection, account of National Bank of Kansas City." The draft was paid to the Exchange Bank, where the money was attached as the property of S. A. Brown & Co. And it was so held. The Supreme Court of Georgia say: " The agency created by the owners of this bill by means of this endorsement, had not been fully executed. The Kansas City bank was still the immediate agent under them, and the Macon (that is, the Exchange) bank was a sub-agent under it. The latter held the money as a bailee for the ultimate use and benefit of the owners." Again, quoting from the same opinion: " The maker of a restricted endorsement can follow the bill or its proceeds over any number of subsequent endorsements, *the terms of his endorsement being notice of his title.* " And, as we have said, it was held that notwithstanding the depositors, S. A. Brown & Co., had endorsed their paper, precisely as the paper in this case was endorsed, title did not pass, and the money attached in the hands of the Exchange Bank was condemned as the property of S. A. Brown & Co. It would too greatly prolong this opinion if we should examine the many cases in which various forms of endorsements have been held restrictive, and we shall only cite a few of them.

" Pay S. V. W. or order, for account of Miners Nat. Bank of Georgetown." *White vs. National Bank,* 102 *U. S.,* 658. " Pay to P. or order only." *Power vs. Finnie,* 4 *Call (Va.),* 411. " Pay T. W. or order for our use, value received on account." *Wilson vs. Holmes,* 5 *Mass.,* 543. " Pay to order of W. H. & Co., account First Nat. Bank of Chicago." *First National Bank of Chicago vs. Reno County Bank,* 3 *Fed. Rep.,* 261. " Credit my account, J. B. S. Cashier." *Lee vs. Bank,* 1 *Bond (Ohio),* 387.

We think, therefore, that looking at the endorsement itself, without regard to any course of dealing between

the parties, the language of the endorsement cannot be held
to transfer title to the check in question, but on the con-
trary, must be held to be restrictive, at least, until the
bank has performed its duty, and has collected the pro-
ceeds of the check. And this is the view very clearly
expressed by Mr. Daniel in his work on *Negotiable In-
struments,* even when the paper is so endorsed as *prima
facie* to transfer title; as, for instance, in blank or to the
order of the bank. He says that the collection of checks
is generally attended with so little delay that banks are
willing to treat them as cash deposits, and allow their
customers to draw against them in anticipation of collec-
tion, reserving the right to charge back the paper to the
customer if returned unpaid. " Out of this practice," says
the author, " has grown the *erroneous idea* that the bank,
without more, becomes the owner of the deposited paper
before collection, exemplified in *Metropolitan National
Bank vs. Loyd,* 90 *N. Y.,* 530." " Later cases," continues
the author, "hold, and correctly as we conceive, that
the checks deposited in bank by its customers do not at
once become the property of the bank, but that it con-
tinues to be the agent of the customer until actual col-
lection, the check in the meantime remaining the property
of the depositor."

And in *Balbach vs. Felinghuysen,* 15 *Fed. Rep.,* 675,
one of the cases to which reference is made in the note
to the section just cited, it was held that even when the
check is endorsed to the bank and credit is given for it as
cash on the customer's pass-book and the books of the
bank, these facts are not conclusive evidence that title
passes to the bank, for two reasons say the Court: (1)
" Because such credit was only conditional, and, if the check
should be dishonored, it would be charged back to the
customer, which is inconsistent with ownership in the
bank; and (2) because this practice of banks to credit
such deposits at once and to allow the depositor to draw

against them is reckoned by the ablest text writers, as a mere gratuitous privilege." See also *St. Louis & San Francisco Railway Co. vs. Johnston,* 133 *U. S.*, 566. It would seem to follow that, whether we consider the endorsement alone or in connection with the credit given in this case to Ditch & Bro. by the Nicholsons, the result would be the same. For it is conceded here that no absolute credit was given, the Nicholsons always reserving to themselves the right to charge back or return unpaid paper.

As between Ditch & Bro. and the Nicholsons, without regard to the restrictive character of the endorsement, no title to the check passed to the latter. No consideration was paid by them; and they were, and they knew they were, insolvent when the check was deposited. "The acceptance of a deposit by a bank irretrievably insolvent constituted such a fraud as entitled the depositor to reclaim his draft or the proceeds." FULLER, C. J. *St. Louis & San Francisco Railway Co. vs. Johnston, supra.*

We have neither found nor been referred to any authority which sustains the contention of the appellee, unless the section in *Morse on Banking* (*sec.* 577), cited in the opinion of the learned judge below, can be so considered. But when this section is examined, and especially when it is ascertained that the sole authority (*Nat. Commercial Bank vs. Miller & Co.*, 77 *Ala.*, 168) which Mr. Morse cites to sustain it, does not seem to support the contention of the appellee, we may well hesitate before adopting the construction which it has placed upon Mr. Morse's language. It would seem more reasonable to construe this section (577) to mean that when a check is endorsed " for deposit," under the circumstances therein set forth, the bank may have the check certified, instead of actually collecting the money. And so the author says in the last clause of the section. In the case just cited (*Nat. Commercial Bank, vs. Miller & Co.*) it was held that title passed to the bank

for the consummation of the purpose for which the endorsement was made, that is to say, to enable the bank to deposit the proceeds to the credit of the endorser. It is nowhere said in that case that absolute title passed to the bank by virtue of the endorsement alone. But on the contrary, the question under consideration was the effect of the endorsement together with the certification of the check. And having determined that the bank by virtue of the endorsement had the right to have the check certified, and that when certified the check was, in contemplation of law, paid; the bank thereupon became the owner of the check and was the debtor of the depositor. In other words, the endorsement " for credit," like the endorsement " for collection," gives the bank the right to collect the proceeds and credit them to the depositor, but in neither case can the bank appropriate to its own use paper so endorsed. Nor does the Court in *National Commercial Bank vs. Miller & Co.*, intimate such a view. On the contrary, it held that the bank " by accepting a certification of the check made it their own, and the relation of debtor and creditor was created." The endorsement " for deposit " passed title for the purpose of certification, and the certification being in contemplation of law, payment, the depositor's title to the check was transferred to the bank. Without adopting these views, we have referred to them for the purpose of showing that they do not seem to support the contention of the appellee, nor the construction it gives to sec. 577 of *Morse on Banking.*

There is a wide distinction between *Bank vs. Miller & Co.* and the case under consideration. There the check was endorsed, deposited, *and collected* ; but here there has been *no collection*—no payment of the check either in cash or its equivalent.

If, however, the section (577) we have just referred to is to have the construction given to it by the appellee, there would be a striking conflict between it and section

584 of the same book, where it is said that "when checks are deposited they are taken generally for collection by the bank as agent, and the bank does not owe the amount until the collection is accomplished. The bank may permit, as matter of favor, checks to be drawn before collection and payment, the depositor in the event of non-payment being responsible for the sums so drawn, not by reason of his endorsement, the checks not having ceased to be his property, but for money paid." 2 *Morse on Banking, sec.* 584.

In *Bolles on Bank Collections, sec.* 8c., *Ed.* 1893, the author cites the case of *City of Somerville vs. Beal,* 49 *Fed. Rep.,* 790, to sustain the view that an endorsement for "deposit" with credit and conditional right to draw, transfers title; but this case was taken by appeal to the U. S. Circuit Court of Appeals, and is reported in 50 Fed. Rep., 647. And in the Court last named the contrary doctrine was held and ably maintained by an elaborate opinion, from which we have already quoted to show that such an endorsement is restrictive, and does not pass title. And in the case of *Metropolitan National Bank vs. Loyd, supra,* cited by the appellee to sustain its contention, the credit given by the bank to the depositor was an absolute one. "Admitted circumstances," say the Court, "show it was the intention of the parties to make the transfer absolute," and "the bank charged itself with a debt absolutely due to Murray," the depositor. But here, as we have seen, there is not only no absolute credit, but "the credit entry of cash was a mere delusion." And as was said in *Beal vs. City of Somerville, supra,* if the appellee bank had shown that the depositor had a legal right to draw against the checks from the moment of the deposit, *so absolute* that the bank could not lawfully suspend it by notice or otherwise, pending the collection, this would tend to support its position throughout. But on the contrary, the provisional or mere pretense of a credit, such as

shown in this case, is inconsistent with the notion of ownership of the check in the bank.

If, however, the check in question had been endorsed in blank, or to the order of the Nicholsons, a very different question would have been presented. Then the legal effect of such endorsement to pass title to *bona fide* holders for value, according to the settled rules of commercial law, and the rights of innocent third parties, if any had intervened, would be properly considered, as was done in *Metropolitan Bank vs. Lloyd* and in many other cases since. " The views of the Supreme Court of the United States," says Mr. *Daniel,* 1 *Neg. Inst.*, *sec.* 340, " seem to embody the true logic of the question. ' The bank transmitting the paper endorsed in blank is ostensibly the owner. It has been agreed by implied contract arising from usage that the avails shall be applied to balances against it. With this understanding its correspondent undertakes the collection and applies the avails. And then when the contract has been executed it would seem to be in contravention of the universally recognized principle which controls the negotiation of commercial paper to permit a third party who had *declared by his endorsement* that he had parted with his title to come in and assert it.' " The same view is expressed by us in *Tyson & Rawls* and constitutes what PUTNAM, J., in *Beal vs. City of Somerville,* calls the doctrine of " reputed ownership," which he says is recognized by the Supreme Court of U. S. in *St. Louis & San Francisco Railway Co. vs. Johnston, supra.* If, therefore, the depositor does not intend to pass title he should not use the forms of endorsement which are universally used for that purpose, but should adopt some other form, such as " for collection," which we held in *Tyson & Rawls,supra,*does not, without more, pass title, or " for deposit to credit of," which we think, as used in this case, is equally restrictive.

Of course, if the depositor is awarded even the gratui-

tous privilege of drawing in anticipation of collection, and he should avail himself of that privilege, then without regard to the form of his endorsement, he should not be allowed to claim the proceeds of any deposited check. With the proceeds in his pocket he would be estopped. But, as we have seen, that is not this case.

It has been suggested it was against public policy and contrary to the interests of commerce, to hold this endorsement to be restrictive. But we do not think so. On the contrary, in our opinion it would be for the best interests of the public, the banks and commerce, if all endorsements except those which are in full or in blank should be declared restrictive. And such was the opinion of Lord TENTERDEN in the case of *Sigourney vs. Lloyd and others,* 8 *Barn. & C.*, 622. In the case just cited the endorsement was " Pay to Williams or his order for my use." " I cannot see," says Lord TENTERDEN, " that the interests of commerce will be prejudiced by our holding that such an endorsement is restrictive. On the contrary, I think the interests of commerce will be thereby advanced." When this case was taken up on appeal Lord Chief Justice BEST said: " No inconvenience can possibly arise to the commercial interests of the country by limiting the operation of an endorsement so expressed. The only effect will be to make persons more cautious in transactions of this nature in the future. Unless the words *for my use* have no meaning, it is obvious, upon looking at the endorsement, that enquiry was necessary to have been made, and if a meaning can be found for those words, the Court must apply them so as to meet the object and intention of the *endorser."* 3 *Moore & Payne,* 229.

The commercial world is well acquainted with the forms of endorsement universally used to transfer paper, and when these forms are not used the owner of the paper ought not to be deprived of his interest therein by any course of reasoning, however ingenious it may be.

Our conclusion is that the legal effect of this endorse-
ment was to give notice to the Western National Bank
that J. S. Ditch & Brothers were the owners of the check,
and that the Nicholsons were only agents to collect the
proceeds of the same and deposit them to the credit of
J. S. Ditch & Brothers.

(Filed 15th March, 1894.)