THE CENTRAL MERCANTILE COMPANY, *Appellee,* v. THE OKLAHOMA STATE BANK *et al., Appellants.*

No. 16,710.

### SYLLABUS BY THE COURT.

1. SALES—*Purchaser of Draft with Bill of Lading Attached Not Liable as a Vendor.* Where the seller of goods ships them and makes a draft upon the purchaser, with the bill of lading attached, one who buys the draft and receives payment thereof from the drawee is not liable for the return of any portion of the proceeds on account of any defect in the quality of the goods.

2. —— *Payment of Draft Guaranteed.* This rule is not affected by the fact that the draft was bought in reliance upon a written guaranty of its payment, in which the bill of lading was described as covering goods of a designated quality.

3. PARTIES—*Voluntary Appearance—No Rights Waived.* Where, under the circumstances stated, the drawee, after paying the draft to a collecting agent, seeks to hold the proceeds by garnishment as the property of the drawer, the owner waives no rights by intervening and asserting his title.

Appeal from Reno district court. Opinion filed December 10, 1910. Reversed.

*Samuel E. Gidney,* and *J. U. Brown,* for the appellants.

*F. F. Prigg,* and *C. M. Williams,* for the appellee.

The opinion of the court was delivered by

MASON, J.: H. A. Paul, of Muskogee, Okla., sent out a circular soliciting business as a shipper of potatoes. The Central Mercantile Company, of Hutchinson, Kan., receiving a copy, wired Paul asking him

to quote price on a car.   In the course of resulting correspondence he reported in effect that he had two cars of choice stock, and asked for a bank guaranty.  Thereupon, at the request of the company, the Citizens' Bank of Hutchinson, on June 17, 1908, sent a telegram to the Oklahoma State Bank, of Muskogee, reading: "We guarantee draft bill of lading attached, two cars choice potatoes for Central Mercantile Company, H. A. Paul, shipper."  Two days later Paul shipped two cars of potatoes to Hutchinson, and drew upon the company for the agreed price, making two drafts, payable to the Oklahoma State Bank, which he delivered to that bank, with the bill of lading attached.   The Oklahoma bank sent the drafts and bill of lading to the Citizens' bank, with directions to collect and remit.   The mercantile company paid the drafts to the Citizens' bank and received the potatoes.   Before the money was remitted the company sued Paul, principally on account of the quantity of dirt found in the potatoes, and served a garnishment summons on the Citizens' bank.   The bank filed an answer, as garnishee, setting out that it still had the proceeds of the drafts, but did not know whether they belonged to Paul or to the Oklahoma bank.   The Oklahoma bank was made a party and claimed the fund.   The plaintiff, in a reply, maintained that the Oklahoma bank had acted only as the agent of Paul, and also that its conduct made it a guarantor of the quality of the potatoes.   Upon the trial the plaintiff was given judgment for $308.42, which was ordered paid out of the proceeds of the drafts.   The Oklahoma bank appeals.

Paul testified in substance that in his business of marketing potatoes, not having sufficient capital to make purchases outright himself, he found it necessary for the buyer either to advance him the money or to furnish him with a bank guaranty by means of which he could procure it, inasmuch as the grower always required payment before shipment; that in the present

instance the Oklahoma bank paid the price of the po-
tatoes to the grower and received in return the two
drafts on the mercantile company, with the bill of
lading attached; that the bank was the sole owner of
the drafts, Paul retaining no interest in them. The
testimony of an officer of the Oklahoma bank was to
the same effect. There was no evidence to the con-
trary. Therefore the transaction must be treated as
what it appears to have been on its face. The con-
tention that the bank was acting merely as the agent
of Paul, and that the proceeds of the drafts belonged
in whole or in part to him, is not substantiated. Con-
sequently the plaintiff's attempt to enforce its claim
against Paul by garnishment has failed.

In behalf of the plaintiff the argument is made that
the telegram it caused to be sent amounted to a condi-
tional acceptance of the drafts, the condition being that
the potatoes covered by the bill of lading should be
"choice"; that the rights of the Oklahoma bank are the
same as though it were seeking to collect the drafts;
that the use of the word "choice" in the telegram pre-
vented it from being an innocent purchaser of them,
and that the mercantile company can recover against the
Oklahoma bank whatever amount it could have recouped
had Paul sued it for the agreed price of the potatoes.
Whatever effect the word "choice" might have in an
action founded upon the telegram, it can have none
here. The Oklahoma bank is not suing the Cit-
izens' bank upon its guarantee or the mercantile com-
pany upon an acceptance of the drafts. The drafts
have been paid by the mercantile company, the drawee,
to the Citizens' bank as agent for the Oklahoma bank,
the payee. No occasion arose to look to the guarantor.
The act of the drawee in paying the drafts placed the
payee in at least as good a position as though there
had been an unqualified acceptance. The situation is
the same as though payment had been made to the
Oklahoma bank directly. The proceeds of the drafts

Mercantile Co. v. Bank.

have become its property as effectually as though it had their actual possession. The plaintiff can not hold any part of them unless upon a showing that it had a valid cause of action against the Oklahoma bank. Unless the Oklahoma bank was in collusion with Paul, and of that there is no evidence, it conducted an ordinary business transaction in an ordinary way, not being in fault in any respect. We perceive no ground of liability on its part, unless one who purchases and collects a draft with a bill of lading attached is deemed to guarantee the character or quality of the goods shipped. A few cases have so held, but two of the principal ones (*Landa v. Lattin Bros.,* 19 Tex. Civ. App. 246, and *Finch v. Gregg,* 126 N. C. 176) have been recently overruled. (*Blaidsell Co. v. National Bank,* 96 Tex. 626; *Mason v. Cotton Co.,* 148 N. C. 492.) The general doctrine to the contrary is well settled. (See notes in 49 L. R. A. 679; 1 L. R. A., n. s., 242; 18 L. R. A., n. s., 1221; 91 Am. St. Rep. 212.) In *Hall v. Keller,* 64 Kan. 211, it was said:

"If banks in whose favor such bills are drawn are made liable for damage on account of the defective quality of the property shipped, and covered by the bill of lading, . . . a serious impediment would be placed in the way of shippers who need a part or all of the price of the commodity sold before its arrival in the market to which it is consigned." (pp. 215, 216.)

In the plaintiff's brief it is suggested that because the Oklahoma bank has come into this case and litigated its rights to the money held by the garnishee its situation is the same as though it were suing the mercantile company for the value of the potatoes. We can not agree to this. The bank is not seeking to collect the drafts, but to hold the proceeds which have already been paid to its agent for its benefit. The statute (Code 1909, § 241) provides that where the answer of a garnishee discloses that any other person than the defendant claims the indebtedness or property in his

hands the court may order the claimant to be made a defendant, and notice to be served upon him. Here the plaintiff made the Oklahoma bank a defendant by so designating it in an amended petition. If the bank entered an appearance without waiting to be served with summons its rights were in no way prejudiced thereby.

The judgment is reversed and the cause remanded, with direction to order the money paid to the Oklahoma State Bank.