AUTO AND ACCESSORIES MFG. CO. *vs.* MER-
CHANTS' NATIONAL BANK, GARNISHEE
OF AMERICAN MOTOR CAR SALES
COMPANY.

*Deposits in bank: drafts or checks; title to—.    Attachment.
Usage or custom; evidence.*

Where a deposit is made in bank, in the ordinary course of
business, of money, drafts or checks, received and credited
as money, the title to the money, drafts or checks is imme-
diately vested in and becomes the property of the bank.

p. 184

Before evidence of a common usage can be received it must
appear that there exists a usage established long enough to
have become generally known, and warrant a presumption
that the contract in question was made in reference to it; and
that the usage is uniform to the business and localities
involved in the injunction.                            p. 183

Evidence of usage can not be received if it contradicts expressly
or by implication the language or substance of the contract.
Usage may be admitted to explain what is doubtful, but it
can not contradict what is plain.                     p. 183

In a suit involving the dealing with a national bank in Indi-
ana and a national bank in Baltimore, a witness, a book-
keeper of the Baltimore bank, was questioned as to whether
certain methods were the custom and usage with his bank.
The witness had not been asked whether there was any gen-
eral usage relating to the subject, and his attention had not
been directed to the field of inquiry to be covered, and fur-
ther, since it did not follow that the same customs existed in
Eastern cities as prevailed in the West, it was *held,* that the
examination was improper.                             p. 183

The Motor Car Sales Company of Indiana deposited in the
National Capital Bank of Indianapolis a draft on the Auto

& Accessories Mfg. Co. of Baltimore to order of the said bank; the amount of the draft was placed by the bank to the credit of the sales company, and the draft forwarded to the Merchants' National Bank of Baltimore for collection. The accessories company paid the draft to the Merchants' National Bank and the same day attached the funds in the hands of the bank for commissions owing to them by the sales company, claiming that the money belonged to the sales company. It was *held*, that the funds attached did not belong to the Auto Sales Company, and the action of the Court below in the attachment case, directing the verdict to be found for the garnishee (The Merchants' National Bank of Baltimore), was affirmed.                                        p. 187

*Decided June 23rd, 1911.*

Appealed from the Superior Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*R. B. Tippett* (with whom was *Carl R. Mengel* on the brief), for the appellants.

*Robert E. Lee Marshall* (with whom was *J. Hanson Thomas* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

The American Motor Car Sales Company, a corporation not resident in the State of Maryland, kept a large and active account with the Capitol National Bank of Indianapolis and frequently deposited with that bank drafts drawn by the American Motor Car Sales Company upon different persons and corporations. It appears from the testimony of Mr. Kahler, the assistant cashier of the Capitol National Bank of Indianapolis, who was also the person in charge of the discounts of that bank, that bills of lading

calling for one or more automobiles were sometimes attached
to these drafts so deposited, and sometimes there were no
bills of lading attached, but that under the course of deal-
ing between these parties, all drafts so deposited were
entered as cash and passed to the credit of the American
Motor Car Sales Company and became immediately subject
to their check after it was credited upon their pass book.
He also testified that there was no agreement between the
bank and the Motor Car Sales Company in respect to these
drafts.    The Motor Car Sales Company of Indianapolis
drew a draft to the order of the Capitol National Bank of
Indianapolis on the Auto and Accessories Manufacturing
Company, a corporation under the laws of Maryland, in
the City of Baltimore, for the sum of $2,165.00, with a
bill of lading attached calling for several automobiles. This
draft with the bill of lading attached was deposited by the
Motor Car Sales Company in the Capitol National Bank
of Indianapolis by which the proceeds were credited as
cash to the Motor Car Sales Company, both upon the books of
the bank and upon the pass book of the Motor Car Sales
Company, and the draft was by that bank sent to the
Merchants' National Bank of Baltimore for payment, and
it was paid on May 7th, 1909, by the Auto and Accessories
Manufacturing Company. On the same day, May 7th, 1909,
the Auto and Accessories Manufacturing Company issued
out of the Superior Court of Baltimore City a non-resident
attachment against the American Motor Car Sales Com-
pany upon an alleged indebtedness of $2,750, for commis-
sions due on sales of nine automobiles, and for cash advanced,
and the attachment was on the same day laid in the hands
of the Merchants' National Bank of Baltimore, and it was
summoned as garnishee. The garnishee appeared and pleaded
*nulla bona,* and upon replication and issue joined thereon,
verdict was rendered for the garnishee under the instruc-
tion of the Court, and judgment entered thereon; and from
that judgment the plaintiff in the attachment has appealed.
The only evidence in the case as to the general course of

dealing between the Motor Car Sales Company and the Capitol National Bank of Indianapolis, and as to this particular transaction between them, is the testimony of Mr. Kahler, to which we have already referred for a general statement of the case, but we will now refer briefly more particularly to his testimony. When he was asked by plaintiff's counsel if he took the draft for collection, he replied: "No; we took it and credited it as cash." Being further asked, "But you took the draft for collection, did you not?" he replied, "No, sir." "Why didn't you?" "Because it was the same as a discount." "Why do you call it the same as a discount?" "Because it was subject to their check immediately after it was passed on to their pass book;" and under continued pressure from counsel for plaintiff, he continued to assert that it was not taken for *collection* for the drawer, but was placed to its credit as cash and forwarded for payment.

Mr. Barthel, the general bookkeeper of the National Bank of Baltimore was called as a witness for the plaintiff, and it was sought to prove by him some custom of national banks applicable to this case, and three exceptions were taken to the refusal of the Court to allow him to answer certain questions propounded for that purpose.

The first question asked was: "What is the custom of National Banks where they take drafts from customers that are in excellent standing with them, and carrying large balances, in cases where they take drafts on other concerns in other cities?"

The second question is: "Can you state whether, if a draft is put in bank by a depositor in good standing with the bank, it is carried to the credit of the depositor, as cash?"

The third question is: "Will you please state whether or not drafts that are put in, in the manner I have indicated even though they may be marked 'for collection,' are carried as cash to the depositor's credit, if the depositor is in good standing with the bank?"

These rulings all involve the same principle and may be considered together. Before evidence of a custom or usage

can be received, it must appear that there exists a usage established long enough to have become generally known, and to warrant a presumption that the contract in question was made in reference to it; and that the usage is uniform in reference to the business and localities involved in the inquiry. In this case the witness was not asked whether there was any usage relating to the subject of inquiry, nor was his attention directed to the field to be covered by it, and it by no means follows that the same usage which may prevail in bank management in Baltimore, or in Eastern cities, obtains in Indianapolis or in the cities of the West, and the failure to show these preliminary conditions constitutes a substantial objection to these questions.

Moreover, proof of usage can not be received if it contradicts expressly, or by implication, the language or the substance of the contract. *Jones on Evidence,* 2nd Ed., page 585. "Usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain." Here the draft was drawn *to the order of the bank* and was indorsed by it alone, *for collection for it,* and when this is considered in connection with the clear and uncontradicted testimony of Mr. Kahler as to the circumstances of the transaction, such a usage as the plaintiff sought to show, would contradict the conclusion naturally to be drawn from those circumstances and from his testimony. *Balt. Base Ball Club* v. *Pickett,* 78 Md. 375; *First Nat. Bk. of Balto.* v. *Taliaferro,* 72 Md. 169, 170. There was no error in the rejection of these questions. The principal question in this case, viz, the ownership of the draft when it was deposited in the Indianapolis Bank and credited as cash to the depositor, both upon the books of the bank, and also upon the depositor's pass book, was raised by the granting of an instruction to the jury at the close of the plaintiff's case, "that there is no evidence in this case that the garnishee had at the time of the laying of the attachment in this case, or has since had, or now has, any property, funds or credits of the defendant, and therefore their verdict must be for the garnishee."

Upon this question it was said in *Tyson & Rawls* v. *Western Nat. Bank,* 77 Md. 419, "there has been much apparent conflict between the authorities; * * * but this conflict has been more in appearance than in reality."

In *Morse on Banking,* 4th Ed., 1903, Vol. 2, secs. 575 and 577, the general rule is thus stated: "A deposit being made by a depositor in a bank, in the ordinary course of business, of money, or drafts or checks received and credited as money, the title to the money, or drafts or checks is immediately vested in and becomes the property of the bank," sec. 575.

"When a bank receives from a customer a check on another bank for the special purpose of collection, the title does not pass by the special indorsement for that purpose, nor does the receiving bank owe the amount until the check is collected. But where the customer has a deposit account with the bankers with whom he is accustomed to deposit checks payable to himself, which are entered on his pass book, and to draw against such deposits, an indorsement of the words "for deposit" on a check so deposited, is, in the absence of a different understanding, presumption of more than a mere agency or authority to collect; it is a request and direction to deposit the sum to the credit of the customer and gives to the bankers authority not only to collect, but to use the check in such manner as, in their judgment and discretion, having reference to the condition and necessities of their business, may make it most available in their possession, and they may have it certified by the bank on which it is drawn," section 577.

Section 575 is supported by reference to the case of *Nat. Citizens' Bank* v. *Howard,* 3 Howard's Pr. Rep. N. S. 512, and section 577 by reference to *Nat. Commercial Bank* v. *Miller,* 77 Ala. 168. The text is supported by numerous well considered cases, and is in accord with the current, and, in our opinion, with the weight of authority.

In *Titus & Scudder* v. *Mech. Nat. Bank,* 35 N. J. L. 589, the Court said, speaking of certain checks which had been

deposited with the bank: "They were received and credited in the same way as bills or notes of other banks. By such crediting, the bank became the owner of these checks as they do of legal tender notes or bank bills so deposited." And in *Hoffman* v. *First Nat. Bank of Jersey City,* 46 N. J. L. 605, it was held that a check deposited by general indorsement of the payee and passed to the credit of the depositor, from that moment became the property of the bank, and the bank became liable to the depositor to pay any check drawn upon it to the amount of his deposits.

In *Metropolitan Bank* v. *Lloyd,* 90 N. Y. 530, Murray deposited certain checks *for collection;* others he deposited and took credit for *as cash* upon his pass book. The check in controversy in that case was of the latter class. The Court said: "It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. * * * The dealings betweeen the parties show that it was the intention of both parties to make the transfer of the check absolute, and not merely to enable the bank to receive the money upon it as Murray's agent. * * * The appellant urges that the check was not delivered by Murray as the result of a negotiation or application for its discount, or sale or for a credit, and if we look for such negotiation in the words of the parties only, this must be conceded, but if we take the conduct of the parties during the transaction it is otherwise. They adopted a mode of intercourse which fulfilled the function of spoken words, and brought about a result as intelligibly as words could have done."

In *Cragie* v. *Hadley,* 99 N. Y. 131, citing and approving *Met. Nat. Bank* v. *Lloyd, supra,* the Court said: "The general doctrine that upon a deposit being made by a customer in a bank, in the ordinary course of business, of money, or of drafts or checks, received and credited as money, the title

to the money, or to the drafts or checks is immediately vested in and becomes the property of the bank, is not open to question."

In *St. Louis & S. F. Ry.* v. *Johnston,* 27 Fed. Rep. 245, JUDGE WALLACE relied upon 90 N. Y., *supra,* and said: "The intention of the parties in the particular transaction may be ascertained from the course of their previous dealings. When it appears that it has been the uniform practice between the parties in their past dealings to treat deposits of paper as deposits of cash, their intention to do so in the particular transaction should be inferred in the absence of new and inconsistent circumstances." It is true that this decree was reversed in 133 U. S. 567, but the Court said, "the question was one of fact rather than of law," and, "that so far from there being shown an unequivocal course of dealing tending to support the conclusion (of the Circuit Court) it seems to us the tendency of the evidence is otherwise." There is therefore nothing in that reversal to impair the legal principle announced so emphatically by JUDGE WALLACE.

In *Amer. Trust Bank* v. *The Gueder Mfg. Co.,* 150 Ill. 336, the payee of a check indorsed the same "for deposit" to be placed to his credit, and mailed the check to his banker, who gave him credit for the amount, and after indorsing it "for collection and return" forwarded it to the drawer for payment. The Court held such deposit was in legal effect a negotiation of the same so as to vest the legal title in the bank, with the right to charge it back to the depositor in case it was not paid on presentment and that the credit given the depositor was a sufficient consideration for the assignment.

To the same effect are the cases of *Cody & Moore* v. *Bank of Grand Rapids,* 55 Mich. 379; *Security Bank of Minnesota* v. *North Western Fuel Co.,* 58 Minn, 141, and *Ayres* v. *The Farmers' and Merchants' Bank,* 79 Mo. 421.

Zane in his work on *Banks and Banking,* pages 210 to 212, seems to take the position that banks in which checks

and drafts have been deposited for the credit of the depositor can only be regarded as owners of the paper, in favor of third persons who have acquired intervening rights, though he says there are cases which hold that if the deposit is credited as cash the title passes to the bank, and he adds: "The conflict of authority is not capable of being explained, but the true rule is that of *Beal* v. *Somerville,* 50 Fed. Rep. 647." That case will be referred to later.

Whatever conflict there may be, or want of harmony, in the decisions in other States or jurisdictions, a careful examination of the two Maryland cases, *Tyson & Rawls* v. *Western Nat. Bank,* 77 Md. 412, and *Dilch* v. *Western Nat. Bank,* 79 Md. 192, leads us irresistibly to the conclusion that title to the draft in question here had vested in the Indianapolis Bank under the decision in the last-named case, and that there is no conflict in this State upon the question as here presented.

In *Tyson & Rawls* v. *Western Nat. Bank,* the checks which were the subject of controversy were sent to Nicholson & Sons by Tyson & Rawls, indorsed, "For collection for account of Tyson & Rawls, Greenville, North Carolina." Nicholson & Sons credited these checks to them as cash and treated and used them as their own property, but Tyson and Rawls did not know and did not inquire how Nicholson & Sons dealt with them. Nicholson & Sons endorsed them for value to the Western Nat. Bank, which collected them and held the proceeds as its own. Nicholson & Sons failed subsequent to such indorsement, and were, in fact, insolvent at that time, but this was not known to Tyson & Rawls nor to the Western Bank. The Court said: "When a check, draft or promissory note is indorsed in blank, or to the order of the bank, and the proceeds credited to the depositor as cash, the bank becomes the owner of the paper by virtue of the indorsement. And, in case it is not paid at maturity it has the ordinary remedies which belong to the endorsee of instruments of this character which have been dishonored. * * * This indorsement was not adequate to pass to Nichol-

son & Sons the title to these papers. * * * The words 'for collection' evidently had a meaning. That meaning was intended to limit the effect which would have been given to the indorsement without them, and warned the party that contrary to the purpose of a general or blank indorsement, this was not intended to transfer the ownership of the paper or its proceeds." One of the cases relied on by the appellant in the case at bar is *Butchers and Drovers' Bank* v. *Hubbell,* 117 N. Y. 384, but in that case the endorsement was for collection simply, and the Court in *Tyson & Rawls* v. *Western Nat. Bank,* page 419, cites that case to sustain its opinion saying that the opinion in 117 N. Y. "contains a very clear and convincing exposition of the difference between the rights of the banker in case of a deposit of a check or draft indorsed in blank, and one where the paper is indorsed for collection."

*Tyson & Rawls* v. *Western Nat. Bank* was argued before all the judges; JUDGE McSHERRY dissenting and the opinion was delivered by JUDGE BRYAN.

In *Ditch* v. *Western Bank,* 79 Md. 192, which grew out of the same failure of Nicholson & Sons, Ditch & Bros., holders of a check indorsed to them by the payee, indorsed the same "for deposit to the credit of J. S. Ditch & Bro.," and deposited it with Nicholson & Sons, who entered the same as cash to the credit of Ditch & Bros., both on the books of the bank and on the depositor's pass book, and indorsed the check to the Western Bank, by which it was paid to Nicholson & Sons who afterwards made an assignment for the benefit of its creditors, and it was held that the title had vested in the bank which held it and had paid for it. That case was argued before six judges, JUDGES BRISCOE and BOYD not sitting, and the Court declined to hear counsel for the appellee. The case was subsequently reargued before all the judges except JUDGE PAGE, who, however examined the briefs of counsel and noted his concurrence in the opinion of the Court. The opinion in both these cases was written by JUDGE BRYAN, and they both

evince the most careful consideration of the subject. In the latter case, he reviewed at some length the principal cases urged by the appellant, among which is *Beal* v. *Somerville,* 50 Fed. Rep., *supra,* stated by Mr. Zane to lay down the true rule for such a case. JUDGE BRYAN says: "It being our opinion that Nicholson & Sons acquired title to this check, we must declare our carefully considered judgment. If other tribunals for whose learning and ability we entertain the greatest respect, have arrived at conclusions different from our own, we do not feel called upon to abandon the deliberate convictions which we entertain."

In that case JUDGE FOWLER delivered a vigorous and exhaustive dissenting opinion, in which CHIEF JUDGE ROBINSON and JUDGE ROBERTS concurred, and it was doubtless in view of this dissenting opinion that JUDGE BRYAN used the emphatic language just quoted. JUDGE FOWLER reviewed and analyzed the leading text writers, and a number of the decisions adverse to the view expressed by the majority opinion, but without avail to shake the deliberate convictions entertained by the majority. The question here presented, and there decided, upon such full deliberation, must be regarded as finally settled by that decision.

*Judgment affirmed with costs to the appellee above and below.*