Argued March 13, decided March 25, 1913.

**LADD & TILTON BANK *v.* COMMERCIAL STATE BANK.**[*]

(130 Pac. 975.)

**Carriers—Bill of Lading—Rights of Transferee.**

1. The bank, which received a bill of lading attached to a sight draft for the price of a shipment and credited the amount of the draft to the shipper, had a right to the property shipped prior to that of a subsequent attachment creditor, whether the

transaction constituted a transfer of the absolute title to it or merely a pledge to secure an indebtedness.

**Estoppel—Inconsistency of Acts and Conduct.**

2. Where a purchaser of a shipment of broom corn to whom the shipper was indebted paid the amount of a s'ght draft attached to the bill of lading to a bank, which had credited the shipper therewith, thus recognizing the bank as the owner of the shipment, it could not repudiate the bank's title, and attach the proceeds as the property of the shipper.

**Carriers—Bill of Lading—Rights of Transferee.**

3. The chattels represented by a bill of lading are transferred by the delivery of such bill, if nothing else is shown.

---

* The authorities on the conclusiveness of bills of lading as to character and amount of goods as between carrier and bona fide trans°eree are considered in a note in 34 L. R. A. (N. S.) 1177.　　　　Reporter.

From Multnomah:  Robert G. Morrow, Judge.

This is a suit by bill of interpleader by the Ladd & Tilton Bank against the Commercial State Bank, the Standard Broom Company, the Interstate National Bank and W. P. Nelson.  The facts are fully set forth in the opinion.　　　　Reversed: Decree Rendered.

For appellant, Commercial State Bank, there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

For respondent, Standard Broom Company, there was a brief and an oral argument by *Mr. H. B. Dickerson.*

Mr. Justice Burnett delivered the opinion of the court.

The plaintiff bank instituted this suit in interpleader against the Standard Broom Company, which will be called for convenience the company, the Commercial State Bank, which will be called the bank, the Interstate National Bank, and W. P. Nelson, an individual.  It appears that Nelson bought from the growers in Kansas enough broom corn to make a car load, which he consigned to the company upon whom he drew a sight draft

to the order of the bank, with the bill of lading for the corn attached, for $1,324.95, and delivered the draft and the attached bill of lading to the bank. The latter forwarded these papers to its correspondent, the Interstate National Bank, a corporation, for collection, and it, in turn, forwarded them, for a like purpose, to the plaintiff. The company, upon presentation thereof, paid the draft, took up the bill of lading, received the property represented thereby, and immediately began an action in the circuit court of Multnomah County against Nelson, then a resident of Kansas, on his promissory note held by the company, attaching the proceeds of the draft in the hands of the plaintiff. The bill of interpleader was the result, and, the plaintiff having paid the money into court to abide its decree, the contest is here waged between the company and the bank, each claiming the money, the latter by absolute title and the former by virtue of having attached it as the property of Nelson. The Interstate Bank was eliminated as having no interest in the matter, the papers having been in its possession only for collection, and Nelson answered also, disclaiming all interest in the funds or the property from which it was derived. At a hearing the circuit court passed a decree in favor of the company, directing, in substance, that out of the money the plaintiff had paid into court, upon the order of interpleader, the clerk should pay any judgment that might be afterwards recovered by the company against Nelson, who should receive the overplus if any remained, and that the answer of the bank be dismissed with costs and disbursements. It appears in testimony that Nelson had a checking account with the bank, and that he paid for the broom corn by checks against that account. According to the usual course of business between Nelson and the bank, he drew the sight draft, annexed it to the bill of lading, delivered both of them to the bank, and was credited on his account by the bank with the face

of the draft less exchange. Afterwards and before the commencement of the action against him by the company, he drew checks against the balance of the account in his favor, augmented as it was by the amount of the sight draft.

1. The legal effect of the sight draft with the bill of lading attached was to transfer the property to the bank. It can make no difference whether this was a transfer of the absolute title to the broom corn, or whether it was a pledge to secure indebtedness. In either case the bank is entitled to the property and to the proceeds thereof as against the company, claiming by subsequent attachment, so far as appears in the pleadings or evidence before us.

2. The substance of the transaction between the company and the bank was as if the latter had said to the former:

"Here is a car load of broom corn sold to us by Mr. Nelson which we will convey to you if you will pay this sight draft accompanying the bill of lading."

The company accepted this offer, and participated in the deal as its own by paying the sight draft and taking up the bill of lading. It cannot adopt a part of the transation without adopting all of it. If, in fact, the broom corn was the property of Nelson, the company might have attached it in that form; but, having become a party to a transaction based upon the corn being the property of the bank, it is too late for it to repudiate that arrangement, and treat the proceeds of the sale of the corn as the property of Nelson.

3. It is well settled by the authorities that the chattels represented by a bill of lading are transferred by the delivery of such a document if nothing else is· shown. Under circumstances similar to those here disclosed, it is an apt and usual way of passing title to personalty in the ordinary course of trade. The undisputed testimony is that such was the transaction between Nelson

and the bank. No fraud is alleged or shown. Although Nelson may have been indebted to the company, he had a right to transfer the title of the corn to the bank as against anything appearing here, and such was the effect of the transaction disclosed by the testimony relating to the bill of lading and the sight draft. *Temple Nat. Bank* v. *Louisville,* etc. (Ky.) 82 S. W. 253; *Bank of New Roads* v. *Kentucky* (Ky.) 85 S. W. 1103; *Bank* v. *Wright,* 48 N. Y. 1; *Dows* v. *Bank,* 91 U. S. 618 (23 L. Ed. 214); *First Nat. Bank of Kansas City* v. *Mt. Pleasant Milling Co.,* 103 Iowa, 518 (72 N. W. 689); *Central Mercantile Co.* v. *Oklahoma State Bank,* 83 Kan. 504 (112 Pac. 114: 33 L. R. A. [N. S.] 954).

It was argued at the trial that because the bank had a right to look to Nelson for the amount of the draft, if the same had been dishonored, the whole transaction amounted to only an agency in the bank by which it undertook to collect the draft for the account of Nelson, thus leaving it none the less the property of the latter and so subject to attachment. But the draft was not dishonored, and all who had anything to do with the matter as actors say that it was the intention to vest the title in the bank. The privilege of looking to the drawer of paper for reimbursement in case it is dishonored attaches to all commercial paper to protect and not to destroy it.

Some authorities were cited to the point that mere crediting of paper to a customer does not transfer the title to the bank. *Armstrong* v. *Boyertown Nat. Bank,* 90 Ky. 431 (14 S. W. 411: 9 L. R. A. 553); *Midland Nat. Bank* v. *Brightwell,* 148 Mo. 358 (49 S. W. 994: 71 Am. St. Rep. 608), and *First Nat. Bank of Clarion* v. *Gregg,* 79 Pa. 384, are such precedents, but they and other cases cited were instances where the paper had been sent for collection, illustrating the situation here as between the three banks, or else they depended on peculiar circumstances not here appearing. The decree of the circuit

court is reversed, and one here entered according to the prayer of the answer of the Commercial State Bank.

REVERSED : DECREE RENDERED.