No. 19,065.

CHARLES D. SCOTT, *Appellant*, v. THE W. H. MCINTYRE COMPANY (THE CITY NATIONAL BANK OF AUBURN, INDIANA, Interpleader, *Appellee*).

SYLLABUS BY THE COURT.

BANKING—*Draft Delivered to Bank—Immediate Credit Given Depositor—Bank Becomes Owner of Draft and Its Proceeds.* Where a draft with a bill of lading attached is delivered to the bank in whose favor it is drawn, which forwards it to a correspondent for collection and gives immediate credit to the depositor, the proceeds while in the hands of the correspondent bank are to be regarded as belonging to the payee named in the draft, as against a creditor of the depositor who attempts to reach them by garnishment, after the account, as increased by the deposit, has been overdrawn, and this notwithstanding the practice of the first-named bank to charge its depositor with the interest on such items from the time of giving credit until the proceeds were actually received, and to charge back their amount in the event of nonpayment, and notwithstanding that a serial number was placed on said draft by the original bank in sending it out for collection, and that a witness testified to a general practice of bankers to place such numbers upon items received for collection but not upon those accepted as cash.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed December 12, 1914. Affirmed.

*Eugene S. Quinton,* of Topeka, for the appellant.

*Robert W. Blair, Charles A. Magaw,* and *Thomas M. Lillard,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: On November 17, 1911, the W. H. McIntyre Company drew a draft for $3412.50 upon Charles D. Scott, of Topeka, payable to the City National Bank of Auburn, Indiana, and delivered it to the bank, with a bill of lading attached. The bank sent the draft to a Topeka bank for collection. Scott paid the draft November 27, and on the same day brought an action against the McIntyre company for $1955, garnisheeing the Topeka bank, which filed an answer setting out the facts and stating that it held the proceeds of the draft subject to the order of the court. Service by publication was made upon the defendant, which made no appearance, and judgment was taken against it. The Auburn bank interpleaded, claiming to be the owner of the money in the hands of the Topeka bank, which was paid into court to await the result of the litigation. The plaintiff filed a denial of the allegations of the interplea, and a jury was impaneled to try the issue. Evidence was taken and the court directed a verdict for the interpleader, upon which judgment was rendered. The plaintiff appeals.

The evidence as to the transactions between the McIntyre company and the Auburn bank was in the form of depositions. It was uncontradicted, and must be deemed to have established these facts: The draft was delivered to the bank by the company in the usual course of business, and in accordance with custom credit was at once given to the company on the books of the bank and in the pass book of the company, whose

account was at the time overdrawn in the sum of $2070.44. Five days later it was again overdrawn. The practice was for the bank to accept such drafts, send them out for collection, credit the company at once with their face, and when the returns were received, charge the company with interest to that time, the understanding being that if payment should be refused in any instance the amount of the item should be charged back to the depositor.

Various assignments of error are made, but the case turns upon the question whether the title to the draft and its proceeds at the time of the garnishment was in the Auburn bank, or in the McIntyre company— whether the bank took the draft as a purchaser, or for collection. There is much apparent and considerable real conflict in the decisions bearing on the matter. They are collected in notes in 7 L. R. A., n. s., 694, and 86 Am. St. Rep. 782. The general rule has been thus stated: "*Prima facie,* according to the weight of authority, the passing to the credit of the depositor of a check bearing an indorsement not indicating that it was deposited for collection merely passes the title to the bank. Still, according to the weight of authority, the rule above stated is not an absolute rule, and is *prima facie* merely, and yields to the intention of the parties, expressed or implied from the circumstances." (3 R. C. L. p. 524; see, also, *Noble v. Doughten,* 72 Kan. 336, 83 Pac. 1048.) In *Beal v. City of Somerville,* 1 C. C. A. 598, 50 Fed. 647, 17 L. R. A. 289, which in one of the notes referred to (7 L. R. A., n. s., 694, 700) and which is classed with the minority decisions, it was held that the right of the bank to charge back the item to the depositor in the event of its nonpayment is inconsistent with the hypothesis that title thereto had passed to the bank. This view has been adopted in a number of cases, of which *Packing Co. v. Davis,* 118 N. Car. 548, 24 S. E. 365, is typical. It has been denied in others, examples of which are: *Auto Mfg. Co. v. Mer. Nat. Bank,* 116

Md. 179, 81 Atl. 294; *American Trust & Sav. Bank v.*
*Gueder & P. Manuf'g Co.*, 150 Ill. 336, 37 N. E. 227; and
*Fourth National Bank v. Mayer,* 89 Ga. 108, 14 S. E.
891.    Of the Beal-Somerville case one of the text-
writers says: "This last is the only able examination
of the matter that has been made.    It expressly dis-
approves 2 Morse on Banking, 896."    (Zane on Banks
and Banking, § 133, p. 211, note 14.)    Another says of
it: "The court lays much weight on the fact that the
indorsement was 'for deposit,' which was held, errone-
ously, it is submitted (*ante,* note 64), to import a bail-
ment, with the result that it rested on the bank to sup-
port affirmatively a claim that on the deposit it became
an owner of the check."    (Tiffany on Banks and Bank-
ing, § 11, p. 38, note 82.)    We can not regard the right
of a bank receiving a draft for deposit to charge the
amount back to the depositor if payment is refused as
having a determining influence.    Such a right on the
part of the bank would seem to be an ordinary incident
even of a deposit which is accepted as cash.    The trans-
action is based upon the supposition that the draft is
going to be paid.    A guaranty of payment often results
from the indorsement, but however evidenced it should
not militate against the theory of a passing of the title.
The fact that the depositor has guaranteed the payment
of a draft with a bill of lading attached should not pre-
vent the bank from holding the goods or their proceeds,
and looking first to them, as against the depositor or
any claimant under him, such as an attaching creditor.
(See *Shaffer Bros. v. Rhynders,* 116 Iowa, 472, 89 N.
W. 1099; *German Nat. Bank v. Grinstead,* 21 Ky. Law
Rep. 674, 52 S. W. 951.)

   Some of the conflict in the decisions bearing upon
the general aspects of the question can be accounted
for by differences in the facts, and the manner in which
the issue of ownership has been raised, but in some in-
stances the divergence is due to the attitude taken as
to the effect of giving immediate credit to the depositor.

An extended review of the authorities is not thought necessary. Here we regard the result as controlled by the circumstance that the depositor not only received credit for the amount of the draft, but actually drew upon it and used the full amount. When the item was deposited the account of the McIntyre company was overdrawn. The credit operated at once to offset the depositor's debt to the bank. Before the garnishment summons issued the account was again overdrawn, and the credit thereby exhausted. In this situation the McIntyre company could not successfully have asserted a claim to the draft or its proceeds against the Auburn bank, and the attaching creditor could gain no higher rights than were possessed by the defendant. (*Ladd & Tilton Bank v. Commercial State Bank,* 64 Ore. 486, 130 Pac. 975.) In *Perth Amboy Gas Light Co. v. Middlesex County Bank,* 60 N. J. Eq. 84, 45 Atl. 704, which leans to the view favoring the theory of a bailment rather than a purchase, where a draft is deposited for credit, the court said:

"If a depositor deposits a check or draft on a third party with the understanding, either expressed or implied, that he is to draw against it at once as if it were cash, and the bank agrees to accept it and treat it as cash, and the depositor draws against it before the amount is realized by the bank, then it is properly treated as a deposit of cash. Or, if the depositor is already indebted to the bank, and the deposit is received in whole or partial payment, the same result follows." (p. 91.)

In *National Bank of Webb City v. Everett,* 136 Ga. 372, 71 S. E. 660—an attachment case—this language was used:

"The evidence discloses that at the time of the deposit the drawer had overdrawn his account, and the deposit was entered as cash to his credit; that the drawer was not only accustomed to draw against deposits of this character, but actually did draw. These circumstances evince the parties' intention to treat the draft as a deposit of money, and therefore the title to the draft and the bill of lading attached is in the bank." (p. 374.)

Of the situation arising even where a restricted indorsement indicates that a draft is deposited for collection, it is said:

"If, notwithstanding such restrictive indorsements, advances are actually made to the depositor, the title passes. . . . The mere crediting of paper thus indorsed to the depositor as cash does not transfer the title. If the depositor has a right to draw at once for the amount credited as though it were a cash deposit, in some states the title passes; in others it does not pass until he has actually drawn." (5 Cyc. 497.)

The bank in its interplea described itself as the owner of the proceeds of the draft. Whether its interest amounted to a full title or to a lien for what it had advanced is not material, since the controlling facts were fully developed.

Whether the title to a draft passes to a bank which gives the depositor credit immediately upon its receipt, depends upon the actual or presumed intention of the parties, and may in a particular case be a question of fact for a jury. Here the only direct testimony concerning the actual purpose of the McIntyre company and the Auburn bank is to the effect that a purchase was intended, and not a deposit for collection. This testimony, however, probably amounted only to the statement of a legal conclusion. The character of the transaction is determined by the circumstances already stated. The draft bore a serial number placed upon it by the Auburn bank. A witness for the plaintiff testified that it was the practice of banks to assign such a number (corresponding to that entered in a register) to items which were received for collection, but not to those accepted as cash. This is relied upon as evidence to support a finding that the title to the draft remained in the company. We agree with the trial court that upon all the evidence the question of ownership was one of law, and that the fact that a serial number had been assigned to the draft by the Auburn bank can not

33—93 KAN.

affect the matter, in view of the other circumstances which serve fully to characterize the transaction.

Complaint is made of the rejection of evidence offered by the plaintiff, but we regard it as insufficient to influence the result.

The judgment is affirmed.