John A. Anderson and Charles A. Gustafson, trading
as Anderson & Gustafson, Appellees, v. Keystone
Chemical Supply Company. Union National Bank
of Philadelphia, interpleading, Appellant.

## Gen. No. 24,429.

1. GARNISHMENT, § 127*—*protection of interest of equitable
owners.* Courts of law will notice and protect the interest of equi-
table owners in a garnishment proceeding.

2. GARNISHMENT, § 127*—*application of equitable principles.*
In garnishment proceedings the court will apply equitable prin-
ciples.

3. GARNISHMENT, § 24*—*when proceeds of sight draft drawn by
consignor of goods to his own order and placed with bank as col-
lateral are subject to garnishment as funds of consignor.* Where a
consignor of goods drew a sight draft to his own order on the pur-
chaser, attaching the bill of lading thereto, and placed them with
a bank as collateral for a demand note given by him for a loan
negotiated with it at the time, such note providing that the col-
lateral and any moneys on deposit with the bank should be ap-
plicable to secure the payment of any past or future obligation
of the consignor held by the bank and that such securities should
be a continuing security for all of such obligations and that in
case of default by the maker the bank could sell the collateral and
could become the purchaser thereof, and it appears that at the
time the demand note was given and for a month thereafter the
consignor had with the bank a daily balance more than sufficient
to meet the demand note, and that on collecting another draft,
held as collateral for the same note, the bank had credited the pro-
ceeds thereof on the note, it was *held* that the bank was not the pur-
chaser of the sight draft but took it from such consignor for col-
lection, the proceeds to be credited to his account when collected,
and that the proceeds of the draft were subject to garnishment in
the hands of another bank, to which it had been forwarded for
collection, as funds of the consignor, notwithstanding the consignor
subsequently went into bankruptcy and was indebted to the bank for
a large amount.

TAYLOR, J., dissenting.

Appeal from the Municipal Court of Chicago; the Hon. EDMUND
K. JARECKI, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

Anderson et al. v. Keystone Chemical Supply Co., 216 Ill. App. 274.

at the October term, 1918.    Affirmed.    Opinion filed December 31, 1919.

MILLER, STARR, BROWN, PACKARD & PECKHAM, for appellant; THOMAS McCALL, of counsel.

ALDEN, LATHAM & YOUNG, for appellees; CHARLES MARTIN, of counsel.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiffs, Anderson & Gustafson, bought a quantity of soda from the defendant Keystone Chemical Supply Company, the price being $3,219.65. The defendant was indebted to the plaintiffs on other transactions in an amount exceeding $4,000. When the soda was shipped, the defendant drew a sight draft on plaintiffs, payable to itself and attached the bill of lading. The defendant had a running account with the intervener, The Union National Bank of Philadelphia, and had a balance of over $11,000 in the bank at this time and it arranged with the bank for a loan of $4,000, which amount the latter credited to the defendant's account. The defendant gave the bank its demand note for the amount of their loan and as collateral therefor it placed with the bank, the Anderson & Gustafson draft and bill of lading and also another draft (on New York) amounting to $1,479. This collateral note provided "that the securities hereby pledged, together with any that may be pledged hereafter, or any moneys now or hereafter in the hands of the holder of this obligation on deposit or otherwise to the credit of or belonging to the undersigned, shall be applicable in like manner to secure the payment of any past or any future obligations of the undersigned held by the holders of this obligation, and all such securities in their hands shall stand as one general continuing collateral security for the whole of said obligations so that the deficiency on any one shall be made good from

the collaterals on the rest." It further provided that
in case of any default by the maker, the Bank could
sell or transfer the collateral either at public or private
sale and at any such sale the Bank could "become the
purchaser and absolute owner thereof. *  *  *" . The
New York draft was paid and the Union National Bank
credited its proceeds on the note. The Anderson &
Gustafson draft was sent to the First National Bank
of Chicago for collection and it was duly presented to
the plaintiffs. The latter brought this action of attach-
ment against the defendant, on the ground of nonres-
idence. They then gave the First National Bank their
check for the amount of the draft and received the bill
of lading for the soda, and immediately the bailiff of
the Municipal Court served a writ on the First Na-
tional Bank, as garnishee. The garnishee answered
that it had no funds belonging to the defendant save
as might be shown from the foregoing facts. The
Union National Bank of Philadelphia filed an inter-
vening petition and claimed the fund attached, contend-
ing that it had purchased the draft and bill of lading
for value and was the owner thereof. In addition to
the foregoing facts the evidence showed that for over
a month after the defendant made its loan with the
Union National Bank and deposited this draft with
it as collateral, their daily balance in their account
exceeded the amount of the draft and the amount of
the note and on the day the attachment writ was served
their balance was $24,603.18.

The case was tried before the court without a jury
and the court found against the contentions of the in-
tervener Union National Bank and gave judgment for
the plaintiffs on the answer of the garnishee, for the
amount the latter had received in payment of the draft
and from that judgment the intervener has appealed.

The only issue presented to the trial court under the
interplea filed by the intervener Bank was whether the
Bank had purchased the draft from the defendant for
value as alleged by it in its interplea. We are of the

opinion that the trial court was correct in finding that the evidence did not establish that fact. On the contrary, it showed that the intervener Bank took the draft, payable to defendant's order, as part collateral on defendant's note. The intervener Bank having failed to establish the allegations of its petition, the trial court correctly found the issues as between the plaintiffs and the intervener Bank, for the plaintiffs.

Counsel for the intervener Bank have called our attention to a number of cases which it is contended are applicable to the facts involved in the case at bar, namely: *Ladd & Tilton Bank v. Commercial State Bank,* 64 Ore. 486; *Scott v. W. H. McIntyre Co.,* 93 Kan. 508; *Painsville Nat. Bank v. Hannan* (Colo.), 171 Pac. 364, and *Walsh, Boyle & Co. v. First National Bank of Hiawatha,* 228 Ill. 446. We do not consider these cases in point, as they might be if the draft in question had been drawn to the order of the intervener Bank and the bill of lading had been indorsed to that bank and the draft and the bill of lading had been deposited with the Bank and the draft discounted and its amount credited to the account of the depositing consignor and the latter had checked out against its deposits as thus augmented by the credit resulting from the discounted draft, and the question was as to the rights of the Bank as against an attaching consignee. Even under that state of facts it has been held that although title to the goods covered by the bill of lading passed to the Bank discounting the draft, the Bank's ownership of the goods is conditional and not absolute and that it takes the legal title for one purpose only and that is for its protection, and if the evidence shows it does not need the goods for that purpose, because the depositing consignor has with the Bank, at the time of the attachment, an amount sufficient to satisfy the draft, the Bank cannot use the goods to enable the consignor to defeat the collection of a debt from the latter to the consignee, but should charge the account of the consignor with the amount of the draft which it

has discounted. *W. T. Wilson Grain Co. v. Central Nat. Bank* (Tex. Civ. App.), 139 S. W. 996; *Van Winkle Gin & Machinery Co. v. Citizens' Bank of Buffalo*, 89 Tex. 147. There is much more reason why this should be the ruling in the case at bar where the draft was not drawn to the order of the Bank but of the consignor and where the deposit of the draft and bill of lading was expressly made as collateral to a note, under the terms of which not only the draft but the consignor's deposit, which was shown by the evidence to have been greater than the amount of the draft and of the note from the time the note was given until the proceeds of the draft were attached and for some days thereafter, was to be treated as a continuing collateral.

The situation is not changed by reason of the fact that the defendant is now bankrupt and considerably in debt to the intervener Bank. The evidence shows that at the time the plaintiffs attached this sum of $3,219.65, on which the intervener Bank had a lien to the extent of the balance then unpaid on the defendant's note, which was $2,521, the defendant had some $25,000 on deposit with the intervener Bank and that for some weeks thereafter it continued to have an amount on deposit considerably in excess of the balance remaining unpaid on its note, which was a continuing collateral on the note. The intervener Bank did not need the proceeds of the plaintiffs' draft for its protection on the note but when that was attached, it should have charged the balance remaining unpaid on the note, against the balance the Bank owed the defendant, on its deposit. Having chosen not to do so and the deposit having been wiped out or, in other words, the Bank having paid the defendant all it owed the defendant without deducting the amount remaining unpaid on the note, it cannot now use the proceeds of the plaintiffs' draft for that purpose, to the plaintiffs' injury. It is the policy of the law to assist creditors in collecting just claims and it is also the

rule that courts of law will notice and protect the interest of equitable owners in a garnishment proceeding, and in such suits the court will apply equitable principles. *J. B. Inderrieden Co. v. United States Nat. Bank of Newberg,* 176 Ill. App. 301. In that case the facts were such that the equities were with the intervener Bank, while under the evidence in the case at bar, our opinion is that such is not the case.

In the cases relied upon by the intervener Bank, the circumstances were such that if the drafts had been paid and no attachment had intervened, the proceeds of the draft would properly have been received by the Bank and become a part of its own funds and property without any further reference to the depositor (consignor) or the latter's account and without any entries on the Bank's books as to the depositor's account. But it is significant that in the case at bar that was not done when the New York draft, taken by the Bank as collateral on the depositor's note, together with the draft in question, was paid. When that draft was paid and the proceeds reached the intervener Bank, the latter credited the amount of that draft on the defendant's note, a thing wholly inconsistent with the present contention of the Bank that it had bought the draft for value and owned it. If the intervener Bank had discounted the draft in question and owned it, as claimed, it would be entitled to the entire proceeds of the draft upon its being paid by the consignee upon whom it was drawn. But admittedly that is not the case for the proceeds of the draft were several hundred dollars in excess of the amount remaining unpaid on the defendant's note after the proceeds of the New York draft had been credited on it.

Under all the facts in this case, the intervener Bank cannot be said to have discounted the draft. It rather took the draft from the consignor for collection, the proceeds thereof to be credited to the consignor's account, when collected. By virtue of the consignor's note and collateral agreement, that credit was extended

at once, and in due course the proceeds of the draft would be credited on the note instead of to the consignor's account. Thus the intervener Bank became the agent of the consignor for the collection of the draft (a very different situation from the one involved in the *Walsh, Boyle & Co.* case, *supra*), and the allegations of its interplea to the effect that the intervener had discounted the note and owned it, were not made out by the proof.

For the reasons stated we are of the opinion that the finding against the intervener was correct and therefore the judgment of the Municipal Court is affirmed.

*Affirmed.*

MR. JUSTICE TAYLOR dissenting: In order that the judgment may stand, it is necessary to start with the premise that the money when paid to the First National Bank became and was in its hands that of the Keystone Chemical Supply Company. That premise, however, does not exist, as the evidence shows that the Keystone Chemical Supply Company gave the draft to the Union Bank in order that the latter might collect it for itself and keep the proceeds. Then, further, as regards the rights of the plaintiffs, they paid the draft to the First National Bank recognizing that bank as the agent of the Union Bank; and that as a matter of law was the same as though they had gone to Philadelphia and paid the money to the Union Bank over its own counter. Of course, if, as a matter of fact, they actually had done the latter, obviously they could not reasonably claim any rights in the money so paid over, either by attachment or otherwise. Stripped of bookkeeping formalities and immaterial legal considerations, and considered in a practical, pragmatic way, the money when paid by the plaintiffs to the First National Bank, *eo instanti,* became that of the Union Bank and at the same instant brought about a lessening of

the debt of the Keystone Chemical Supply Company to the Union Bank.

To argue, that it is only fair to allow the plaintiffs to claim what it has paid to the First National Bank, because the Keystone Chemical Supply Company had plenty of money on deposit with the Union Bank is to prefer seeming expediency to the reason of the law. The law is certain that, if the money, into which the draft and bill of lading were transmuted, was that of the Union Bank, the plaintiffs had no right to attach, no matter what the condition of the account between the Keystone Chemical Supply Company and the Union Bank. We are not entitled to help the plaintiffs at the expense of the law. Should it be announced to be the law that, whether or not the plaintiff in such a case may attach, shall be determined by the state of the account between the interpleader and the debtor and not by the ownership of the fund attached and at once an old and fundamental principle of the law, which is based on sound reason, is brushed aside and banking and kindred commercial business rendered much more difficult.

I am much impressed by the reasoning of Mr. Justice Cartwright in *Walsh, Boyle & Co. v. First Nat. Bank of Hiawatha*, 228 Ill. 446, wherein occurs the following language: "The indorsement and delivery of the bill of lading to appellee operated as a symbolical delivery of the flour, and had the effect of transferring the same and vesting the title to it in appellee. * * * In such a case an attaching creditor only obtains the rights which the debtor has in the property at the time of the levy of the writ. * * * The milling company would have had no right to repossess itself of the flour without payment of the draft, and appellant had no better right. This is true whether the amount of the credit by the bank had been checked out or not." The following decisions support the general rule: *American Thresherman v. De Tamble Motors Co.*, 154 Wis. 366, 49 L. R. A. (N. S.) 645; *Means v. Bank of Randall*, 146

U. S. 620; *Latham v. Spragins*, 162 N. C. 404; *Dickson v. Merchants' Elevator Co.*, 44 Mo. App. 498; *First Nat. Bank v. Dearborn*, 115 Mass. 228; *Neill v. Rogers Bros. Produce Co.*, 41 W. Va. 37; *Central Mercantile Co. v. Oklahoma State Bank*, 83 Kan. 504; *Hawkins v. Alfalfa Products Co.*, 152 Ky. 152.