CENTRAL RADIATOR COMPANY, APPELLANT, v. NIAGARA FIRE INSURANCE COMPANY ET AL., RESPONDENTS.

Submitted February 13, 1932—Decided May 16, 1932.

For the appellant, *Isidor Kalisch.*

For the respondents, *Arthur T. Vanderbilt* (*Horace M. Schell,* of the Pennsylvania bar, and *David Stoffer,* on the brief).

The opinion of the court was delivered by

PARKER, J.   Suits against fifteen separate insurance companies based on a loss due to a fire which occurred at Landsdale, Pennsylvania, were consolidated for trial, and at such trial the plaintiff was nonsuited.   The appeal is from that judgment, and the grounds of appeal are only two in number:   (1) the award of the nonsuit;   (2) the exclusion of three questions asked of plaintiff's witness Rohlffs.   The only real question is the proper construction of the language of the policies specifying what property was, and what was not, covered thereby.   The questions overruled bore on this matter, and will be considered in due course.

The plaintiff's property consisted of a number of factory buildings and their contents, constituting a plant appropriate to plaintiff's business indicated by its name.   The subject-matter in suit relates to one building called "the old blacksmith shop" and certain patterns and other property stored therein at the time of the fire.   This building and its contents were destroyed, but the companies refused to pay the claim on the ground that neither the old blacksmith shop nor any personal property while contained therein was covered by the policies.   The trial judge so held, and nonsuited accordingly.

The coverage provisions of the policies are for the most part contained in the "rider" usually attached in such cases. The language of this rider, so far as material, is as follows:

"On machine shop, main foundry, pattern shop and pattern storage building, engine and boiler room, core room, office, blacksmith shop, and on machinery and equipment in machine shop, main foundry, engine and boiler room and office and on supplies in machine shop and office building and on patterns in main foundry and pattern shop and pattern storage building and on lumber in pattern shop and pattern storage building situate at Lansdale, Montgomery county, Pennsylvania.

"This policy covers on the buildings, improvements and structures together with all tangible and/or destructible property moveable and/or immovable, including all articles

mentioned in lines 10 and 11 of the Pennsylvania Standard policy the property of the assured or sold but not removed; also on assured's interest in and on assured's legal liability for similar property held by assured as follows: in trust or on commission or on joint account with others or on storage or for repairs.

"It is understood and agreed that this form excludes coverage on fireproof storage vault and patterns contained therein (and all raw materials in or about plant of assured).

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"It is further understood and agreed that this insurance also covers property, not otherwise specifically excluded, in cars on trucks within one hundred feet (100) of buildings and platforms insured hereunder.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Note—The word 'materials' as used above, includes gasoline and such other materials as are prohibited by the printed conditions of this policy."

Lines 10 and 11 of the main policy (Pennsylvania Standard form) are as follows:

"This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money, notes, or securities; nor, unless specifically named hereon in writing, bullion, manuscripts, mechanical drawings, dies or patterns."

At the trial it appeared without dispute that the "old blacksmith shop" was disused as such, and was used merely for storage purposes. It was claimed that it was included in the coverage clause, but that claim is now expressly abandoned, so that the claim of recovery now is for the patterns, &c., not in use for manufacturing but stored in the old blacksmith shop until they should be needed.

It is argued, first, that any ambiguity in the policy should be resolved in favor of the assured. This is the rule familiar in insurance cases, but which, since the adoption of statutory forms of insurance policies, does not apply with all its former rigor. Of course it is resorted to in any case only where there is doubt as to the meaning.

The second point made in the brief (there was no oral argument) is stated as follows: "The court erred in granting insurers' motion for nonsuit for the further reason that, even if the policies be construed to insure only patterns and dies 'contained in' the buildings expressly insured, none the less the patterns and dies, being property in their nature such that they cannot be presumed to remain there steadily, the policies covered them in their ordinary use outside of such buildings." To this it is sufficient to say that conceding the proposition for present purposes, it is inapplicable to the facts, which are that the patterns, &c., destroyed were not in ordinary use, or any other kind of use, but were stored in order to get them out of the way until they should be needed for use. The Pennsylvania case of *McKeesport Machine Co.* v. *Ben Franklin Insurance Co.,* 173 *Pa.* 53; 34 *Atl. Rep.* 16, is cited for the appellant, but that case seems to be almost exactly the converse of this as the patterns were there plainly covered while in storage and were temporarily removed for use. The intent of the policy seems plain enough. The language of the main policy (lines 10 and 11) is that it is not to cover "patterns unless specifically named hereon in writing." This is qualified by the rider to cover "patterns in main foundry and pattern shop and pattern storage building" (not the old blacksmith shop) but excluding coverage on the "fireproof storage vault and patterns contained therein," which it may fairly be surmised, needed no fire insurance. The specific coverage on patterns by way of exception to the general non-coverage clause should not be extended, we think, beyond the fair meaning of its language which specifies where the exception applies; and it is also restrictive of the clause relating to lines 10 and 11. It is further argued that the permit to use "materials usual and incidental to the business" amounts to a coverage on patterns in the old blacksmith shop, but we confess our inability to follow the reasoning in the brief.

The fourth point is that by going into an inquiry as to the amount of loss, making suggestions looking toward a

settlement, &c., the companies are estopped to plead that the patterns were not covered, and waived that defense. Apart from the fact that plaintiff did not plead a waiver of this defense (though it did plead that failure to file proof of loss in due time was waived) we fail to find evidence to show anything that can fairly be treated as an admission of liability, or that amounts to an estoppel to dispute the claim of coverage. When claim was made, the companies sent a representative to inspect the loss; he reported that the burned building was not covered, and plaintiff was so advised. The correspondence plainly shows that the subsequent negotiations looking to an ascertainment of the amount of loss or what plaintiff would accept and the companies would pay, were based on their protest of non-liability and a mere willingness to waive that position at a satisfactory figure. We think this point is without merit.

The last point alleges error in overruling three questions asked of plaintiff's witness Rohlffs on his direct examination. Rohlffs testified that he was a pattern maker and had been such for eighteen years; that patterns for manhole covers (which were among the patterns destroyed did not become obsolete, because the covers are standard articles. After an intervening question not relevant here, he was asked:

"What is the custom in the business of manufacturing manholes, with regard to the transferability of patterns, where a foundry is not all housed in one building?

"What is the custom in the trade regarding constant retention of patterns in a single building of several buildings in a pattern manufacturing establishment?

"What is the custom regarding incidental changing from building to building as the occasion requires with regard to manhole patterns where the foundry consists of two or more buildings?"

These questions were objected to and overruled, and we think properly so. They all involved an assumption of fact for which there was no foundation whatever in the testimony, viz., that there was a custom in the manhole or pattern manu-

facturing business relating to moving patterns around from building to building. If a trade or business custom is to be proved, the first thing to prove is that it exists, *i. e.,* that there is a custom; and if there be one, then what it is. The implication of all our cases, we think, and the express language of some of them, is to this effect. *Halsey* v. *Adams,* 63 *N. J. L.* 332, 335; *Runyon* v. *Central Railroad Co.,* 64 *Id.* 67; *Calumet Construction Co.* v. *Board,* 78 *Id.* 676; *American Litho Co.* v. *Commercial Insurance Co.,* 81 *Id.* 271, 274; *Cramer & King Co.* v. *National Surety Co.,* 103 *Id.* 83; 17 *C. J.* 519, 520; *Paine* v. *Howells,* 90 *N. Y.* 660, 662; *Auto and Accessories Co.* v. *Merchants National Bank (Md.),* 81 **Atl. Rep. 294, 295, a case in which questions assuming the** existence of a custom were held properly overruled. It is moreover most doubtful, to say the least, whether the questions were relevant or material to the situation of storing patterns when not needed for actual use in casting. Common sense would seem to suggest putting them out of the way in some convenient place. Whether fire insurance covering them in an active pattern shop should be held to cover them in an old frame building otherwise unoccupied, is a different matter.

There is some discussion in the briefs touching the applicability of the law of Pennsylvania to the case in hand, and whether it was properly proved. In our view, the matter is unimportant as the result would not be changed, whatever the ruling thereon might be.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.