No. 22,190.

THE RANNEY-DAVIS MERCANTILE COMPANY, *Appellee,* v. (A. L. BUMGARNER, *Defendant.* THE HOME NATIONAL BANK, Garnishee,) THE FIRST NATIONAL BANK OF MARSHFIELD, MO., Intervener, *Appellant.*

#### SYLLABUS BY THE COURT.

1. BILL OF LADING—*Transferred by Indorsement—Title of Goods Vests in Indorsee—Garnishment.* In a shipment of goods, the consignor, who was indebted to a bank, indorsed the bill of lading and drew a draft in favor of the bank to be applied on his indebtedness to it. The bank forwarded the bill of lading and draft to its correspondent and the consignee paid the draft and obtained possession of the goods, but immediately attached the proceeds of the same in the hands of the correspondent for a debt of the consignor. *Held,* that the transfer of the draft and bill of lading transferred the title of the goods to the bank, and the consignee took them subject to the rights of the bank, and the proceeds of the shipment were not subject to attachment for a debt due to the consignee from the consignor.

2. SAME—*Bill of Lading—Transferred by Indorsement—Prima Facie Intent of Indorser.* The indorsement and delivery of a negotiable draft with bill of lading attached implies an intent to transfer the title to the goods, and strong evidence is required to show that the intention was other than these acts indicated.

3. SAME—*No Collusion or Bad Faith Shown.* Upon an examination of the evidence, it is held that there is nothing in it adverse to the implied intent of the parties, nor anything to show collusion or bad faith in the transfer.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 8, 1919. Reversed.

*C. L. Swarts,* of Arkansas City, *J. P. Smith,* of Marshfield, Mo., and *E. J. Fleming,* of Tulsa, Okla, for the appellant.

*C. W. Wright,* and *A. M. Dean,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The controversy on this appeal is the right of parties to a fund derived from the proceeds of a sale of a carload of tomatoes. On October 3, 1917, A. L. Bumgarner, of Northview, Mo., shipped a car of tomatoes consigned to The Ranney-Davis Mercantile Company, of Arkansas City, Kan., and drew a sight draft upon them to the order of the First National Bank of Marshfield, Mo., with the bill of lading, for $3,423.50. The bill of lading, duly indorsed by Bumgarner, and the draft were delivered to the Marshfield bank, which forwarded them to its correspondent, The Home National Bank of Arkansas City, Kan. Upon presentation, The Ranney-Davis Mercantile Company paid the draft on October 12, 1917, took up the bill of lading, and obtained possession of the goods. On the same day the mercantile company brought an action against Bumgarner, the consignor, on an alleged breach of contract, a claim in no way connected with the shipment in question, and, in a garnishment proceeding against the Home National Bank, attached the money which it had paid on the draft and bill of lading. The garnishee bank answered that it had the sum of $3,423.50 in its possession and would hold it subject to the order of the court. The First National Bank of Marshfield intervened, claiming the money by virtue of the ownership of the tomatoes acquired through the draft and the transfer of the bill of lading, as well as a mortgage on the goods. On the testimony, consisting of depositions and a telegram, the court adjudged that the money in the hands of the

garnishee was the property of Bumgarner and was subject to attachment for his debt to the plaintiff.

The facts in the record, which are practically without dispute, disclose that this was an ordinary business transaction conducted in the ordinary way, by which the consignor indorsed and transferred the bill of lading with the draft attached to the intervener, which transmitted the draft and bill of lading to the consignee, and the latter in turn gained possession of the goods by acceptance and payment. There was no lack of consideration between the consignor and the intervener, and there is no suggestion of collusion or bad faith in the transfer. It has been held that the negotiation of the bill of lading vested in the transferee all the title to the goods which the consignor possessed, and the proceeds of the draft became the property of the intervener as effectually as if it had them in actual possession. (*Mercantile Co. v. Bank,* 83 Kan. 504, 112 Pac. 114; *Bank v. Sprout,* 104 Kan. 348, 179 Pac. 301; Note, 49 L. R. A., n. s., 644.) The intervener held not only the title gained by the indorsement of the bill of lading and the draft, but it had a mortgage upon the goods that were shipped. It was shown that the intervener had loaned Bumgarner considerable sums of money, and, to secure the payment of these loans, mortgages on the goods were executed by him. When the shipment was made, the bill of lading was assigned to the intervener as a partial payment on this indebtedness. There is no doubt as to the existence of the indebtedness, nor of the intention of the parties that the transfer was made in payment of it. The plaintiff questions the validity of the mortgage because the property was not so described as to be distinguishable from other property of Bumgarner of a like character, and also that some of it had been changed in form and placed in cans after the mortgage was executed. We think there is no merit in the contention, but the validity of the mortgage is not essential to the validity of the transfer of the bill of lading, and is not a material question in this appeal. The *bona fide* transfer of the bill of lading for a sufficient consideration carried out the intention of the parties and vested the title and right of possession of the goods in the intervener, and when the plaintiff accepted the bill of lading and paid the draft, it was the end of the transaction, and the proceeds of the goods

could not be attached by the plaintiff or any creditor of the consignor. After transferring the bill of lading and the title to the goods to the consignee, the consignor himself could not have appropriated the proceeds of the sale, and the consignee, having received the goods under the bill of lading, took them subject to the rights of the holder of the bill of lading, and, in the absence of collusion or fraud, had no right to question the title of the holder. (*Latham v. Spragins,* 162 N. C. 404.) The transfer of the bill of lading and the draft, without more, implied an intent to transfer the title of the goods, and strong evidence would have been required to show that these manifestations of intent were other than what the acts of the parties plainly indicated. (Williston on Sales, § 411.) The evidence confirms the implied intent shown by these documents and leaves no doubt of the good faith of the consignor and the intervener. If the bill of lading had been transferred merely as security for the debt of the consignor, and the draft had been drawn on the shipment as security, the bank would have acquired the right to the property, which neither the consignor nor the consignee could have disregarded. (*Halsey v. Warden,* 25 Kan. 128; 4 R. C. L. 33.)

The judgment is reversed, and the cause is remanded with directions to enter judgment in favor of the intervener.